MONAHAN v. THE KEOKUK & DES MOINES RAILWAY CO.

1. **Railroad:** RATE OF SPEED IN DEPOT GROUNDS: STOCK. Under section 1289 of the Code, railway companies are liable for all stock killed on depot grounds, by trains running at a rate of speed greater than eight miles an hour.

2. ———: ———: CONSTRUCTION OF STATUTE. The statute above cited imposes no restriction upon the rate of speed of trains outside of the limits of depot grounds, and the liability of a railway company for stock killed just beyond the limits is not affected by the fact that its train was running faster than eight miles an hour.

*Appeal from Van Buren Circuit Court.*

THURSDAY, APRIL 5.

ACTION to recover double the value of certain horses, alleged to have been injured and killed by being run over by a train on defendant's road. The petition states the horses were killed on the night of the 20th day of August, 1874, and were of the value of $228; that plaintiff gave the defendant verbal notice of the time and place of the injury, and demanded payment, which was refused; that on the 29th day of January, 1875, he gave defendant a written notice as provided by law. In an amendment to the petition, it was stated the horses were killed near the edge of the limits of the village of Kilbourne, and within less than one-fourth of a mile of the depot grounds in said village, by a train of defendant, which was running at an unlawful speed so near the depot grounds; that the road was straight or nearly so for a mile or more, east of where the horses were killed; that the night was not dark, and the horses could have been readily seen, and the train stopped before reaching them, and that the killing was by reason of defendant's gross and willful negligence. A demurrer was sustained to the petition and amendment, on the ground that there could not be a recovery of double the value of the horses.

Afterward a further amended petition was filed, stating that the horses were killed and injured upon the depot grounds,

necessarily used by the defendant and the public, and which grounds were unfenced, and that at the time of said injury and killing the train was running at a greater rate of speed than eight miles per hour.

The answer consisted of a general denial, and set up certain matters as an excuse for the rate of speed at which the train was running, as tending if proved to show there was no negligence. There was a verdict and judgment for the plaintiff, and defendant appeals.

*Lea & Beaman, Gillmore & Anderson* and *John Fyffe*, for appellant.

*Chas. Baldwin* and *Williams & Work*, for appellee.

SEEVERS, J.—Certain interrogatories were propounded to the jury and answered by them. Among others the jury found specially that the train was being run at more than eight miles per hour, and in consequence thereof the horses were injured and killed, and that they would not have been killed if the train had been running at a rate of speed not exceeding eight miles per hour. The jury failed to answer an interrogatory as to whether or not the horses were injured and killed on the depot grounds, and upon being inquired of by the court why they had not answered said interrogatory the jury responded they were unable to agree on that point. There was a general verdict for the plaintiff which together with the special findings was received by the court as the verdict.

A motion for a new trial was made on the ground, among others, that the court erred in not requiring the jury to find specially whether the horses were injured and killed on the depot grounds.

In overruling the motion the court determined the horses were not killed on the depot grounds, but that if they were killed by reason of the train being run on such grounds at an unlawful speed, it was immaterial whether they were killed

on such grounds òr not, and hence, if the jury had found the horses were not killed on the depot grounds, still the plaintiff would be entitled to judgment. It is proper to say the horses were killed at a place where the defendant had no right to fence.

In the opinion of the court below, in which we concur, the right to recover exists, if at all, under and by virtue of the statute, and not at common law by reason of negligence. It therefore becomes necessary to place a construction on section 1289 of the Code.

Previous to the enactment of the Code these corporations were made liable for all stock killed or injured where the 1. RAILROAD: company had the right to fence and failed to do rate of speed on depot so, and the question of negligence in running the grounds: stock. train was wholly immaterial. The negligence consisted in the failure to fence, and they were made absolutely liable for such failure. As the law then stood there could be no recovery for stock killed on depot grounds unless negligence was shown. There was added to this law by the Code the following: "The operating of trains upon depot grounds necessarily used by the company and the public, where no such fence is built, at a greater rate of speed than eight miles per hour, shall be deemed negligence, and render the company liable under this section." Now, for what is the company liable under this addition to section 1289? Clearly, we think, for all stock killed on depot grounds by trains when running at a rate of speed greater than eight miles per hour, and this is the extent of the liability.

Previous to this addition to the statute the right and failure to fence was the test of liability. Upon depot grounds the rate of speed is now the test and, it seems to us, must be held to apply only to stock killed on such grounds.

In the present case the horses were killed just before the train entered the grounds. It was then running at the 2. ———: ———: rate of fifteen or · twenty miles an hour, which construction of statute. rate was continued through such grounds. Now, it may be, if the train had been running at the rate of eight miles an hour just before the horses were struck, it might

have been stopped before the collision occurred. It may be said the jury have so found, but this, we think, is immaterial, because there is no statute regulating the rate of speed at the place where the collision occurred.

It may be conceded it would have been competent for the General Assembly to have made this test begin one mile, or at any other reasonable distance, before entering the grounds, and to end after the train had passed the same distance beyond. But the statute contains no such provision, and a recovery must be had, if at all, under and by virtue of the statute. Besides this, where shall the liability begin and end? That is, at what point before the train reaches the grounds must it be running at eight miles an hour? It may be said, at such distance as the train can certainly enter the grounds at that rate, but this must depend on the grade, weight of the train, and condition of the rails at the time. We think no such rule was intended, and that the only thought of the addition made to the Code was to fix the liability for stock killed on depot grounds. It was, therefore, material that the jury should have answered the interrogatory as to where the horses were killed, and, as the court below determined the weight of the evidence was they were not killed on such grounds, a new trial should have been granted.

The foregoing views are in accord with those of the writer of the opinion in *McKonkey v. C., B. & Q. R. Co.*, 40 Iowa, 205.

REVERSED.