STORY v. CHICAGO, MILWAUKEE AND ST. PAUL RAILWAY
COMPANY.

1.  **Evidence:** CONFLICT: CIRCUMSTANCES TO BE CONSIDERED. It is
the duty of courts and juries to consider the reasonableness of
the testimony of witnesses, and to weigh probabilities founded
upon circumstances surrounding the transactions in dispute, and to
apply the common experience of mankind, in determining ques-
tions of fact. And so, in an action for the killing of horses upon a
depot ground by the alleged running of a train at an unlawful
speed in excess of eight miles per hour, where one witness testified
that the train in question crossed the ground at the rate of twenty-
five miles per hour, but four trainmen and the night operator at
the depot all testified positively that the speed did not exceed eight
miles per hour, but the one witness was strongly corroborated by
the physical circumstances connected with the casualty, and which
were plainly visible after the accident, *held* that a verdict based
upon the truthfulness of his testimony could not be disturbed on
appeal for want of evidence to sustain it.

2.  **Railroads:** UNLAWFUL SPEED AT STATIONS : KILLING OF ANIMALS
BEYOND THE GROUNDS ; PROXIMATE CAUSE. Where, by the unlaw-
ful speed of a train upon station grounds, animals at large thereon
are stampeded, and they run upon the track beyond the grounds,
whether by breaking down fences or otherwise, and without
checking the speed of the train they are run down and killed, the
unlawful speed of the train may fairly be said to be the proximate
cause of the injury, and the company is liable therefor. (*Monahan
v. Railway Co.*, 45 Iowa, 523, *distinguished.*)

3.  ———: INJURY TO STOCK AT LARGE: HERD LAW : DUTY OF STOCK-
OWNER. In an action for negligently killing horses which were
at large upon a railroad track, in a county where the herd law
was in force, if the owner of the horses had them enclosed in
a field with a fence reasonably sufficient to prevent them from
escaping therefrom, he was not chargeable with contributory negli-
gence from the fact that the fence was not actually sufficient to
restrain them. (See opinion for citations.)

4.  ———: ———: SUFFICIENCY OF FENCE : EVIDENCE. Where the
question in dispute was whether the fence was reasonably suffi-
cient to restrain the horses which it was conceded escaped through
the fence, evidence to the effect that the fence was not in fact
sufficient was immaterial.

*Appeal from Clinton District Court.*—HON. A. J.
LEFFINGWELL, Judge.

FILED, FEBRUARY 6, 1890.

THIS action was brought by the plaintiff, Joseph Story, as assignee of one John Powers, to recover damages for the value of certain horses which it is alleged were killed and injured on the line of the defendant's railroad by reason of the negligent operation of a locomotive engine and train of cars. There was a trial by jury, and a verdict and judgment for the plaintiff. Defendant appeals.

*A. L. Bartholomew* and *E. S. Bailey*, for appellant.

*W. C. Grohe*, for appellee.

ROTHROCK, C. J.—I. The injury of which plaintiff complains occurred at Brown's Station, on defendant's

1. EVIDENCE: conflict: circumstances to be considered.

railroad. Some time during the night of October 15, 1886, thirteen head of horses, belonging to plaintiff's assignor, Powers, escaped from his enclosure, and wandered off to Brown's Station, a mile or a mile and a half distant. In the morning Powers followed the track of his horses down to the station, and found that a train running from the east to the west had, by collision with the animals, killed one of them outright, and injured four others so that they had to be killed, and that two others were slightly injured. It is not disputed that the injuries to the horses were inflicted by reason of the passage of a freight train over the road from east to west, at about four o'clock in the morning. The negligence charged in the petition is that the train was run through the depot grounds at Brown's Station at a greater rate of speed than eight miles per hour, and that by reason thereof the engine struck, injured and killed the horses. Section 1289 of the Code provides that "the operating of trains upon depot grounds necessarily used by the company and public, where no fence is built, at a greater rate of speed than eight miles per hour, shall be

deemed negligence, and render the company liable, under this section. A material question in the case is whether the speed of the train through the depot grounds exceeded eight miles an hour. The jury, in answer to a special interrogatory, found that the rate of speed was greater than eight miles an hour. It is contended by counsel for appellant that this finding is contrary to the evidence, and that there is not a scintilla of evidence to sustain it. The plaintiff introduced a witness named Grossman, who testified that he slept that night in a room over his store, about two hundred and twenty feet from the depot; that he heard the train coming, and went to the window of his room, and looked at the train; and that it passed through the depot grounds at the rate of twenty-five miles an hour. On the other hand, four trainmen and the night operator at the depot all testified positively that the speed of the train did not exceed eight miles an hour. It is to be admitted that the preponderance of the evidence, so far as the oral testimony of witnesses to the transaction is involved, was with the defendant; and it must be conceded that the testimony of Grossman was not entirely consistent, and he did not appear to be an expert in determining the speed of a moving body. But we think he was strongly corroborated by the physical circumstances connected 'with the casualty, and which were plainly visible after the accident. One of these circumstances is that in some way the train in question ran down and injured seven horses. Five of these were killed or injured by actual contact with the train. The jury found that three of them were actually struck within the depot grounds, and the evidence shows that two others ran ahead of the train until they were run down and killed, several hundred yards west of the station grounds. The tracks of these animals were plainly to be seen, and they indicated that they were running at full speed, making jumps of about twelve feet. There is another very strong item of circumstantial evidence upon this disputed fact. At the

west end of the station ground there is a cattle-guard, to which the railroad right-of-way fences were attached in the usual way; that is, cross fences were built from the cattle-guard to the line of the right of way, and then turned at a right angle along the right of way. The cross-fence on the south side of the cattle-guard was composed of five barbed wires, double-twisted and fastened to posts by staples driven on the east side. These five wires were all broken, and four of them were strung along the ground to the west, and one to the east. It is incredible to suppose that the herd of horses, while quietly and peacefully grazing upon the station grounds, made a dash for this fence, and broke all of the wires, and went onto the right of way. Such a supposition is contrary to human experience, and, in our opinion, the jury was warranted in finding that the breaking of the fence occurred by reason of the excessive speed of the train, and stampede of the horses; that some of them, in their fright, broke through the fence, and others ran upon the track and were killed and injured. It is the duty of courts and juries to consider the reasonableness of the testimony of witnesses, and to weigh probabilities founded upon circumstances surrounding the transaction in dispute, and to apply the common experience of mankind, in determining questions of fact. Without further discussion, we have to say that we think the jury was warranted in finding as a fact that the train was run at a speed of more than eight miles per hour.

II. The jury found specially that three of the horses were struck by the defendant's train upon the depot grounds at Brown's Station. It is claimed that this finding is contrary to evidence. We cannot reproduce all of the evidence upon this question of fact without unduly extending this opinion. A careful examination of the record has led us to the conclusion that the evidence fully supports the finding, and we are content to dispose of the question in this general way.

III. We have said that two of the animals were killed some distance west of the station grounds; that

**2. RAILROADS:** unlawful speed at stations : killing of animals beyond the grounds : proximate cause.

they were run from at or near the boundary of the station ground by the train, until overtaken and killed. As applicable to these two horses, the court instructed the jury as follows: "If, from a fair preponderance of the testimony introduced in this case, you find that the train was running at a greater rate of speed than eight miles an hour upon said depot grounds, you may next inquire whether or not injuries were inflicted upon said plaintiff's assignor thereby, and whether or not such injuries were the direct result of such negligent act. If you fail to find that such negligence upon the part of the defendant was the proximate cause of the injury, the plaintiff cannot recover. On the other hand, if the injury complained of was the direct result of such negligent acts, then plaintiff should recover (the other issues being found in his favor) such damages as have been established of a preponderance of the testimony. By 'direct result' is meant the first result or effect; and by 'proximate cause' is meant the nearest or next cause, as distinguished from a remote or predisposing cause. Therefore, in order that the defendant should be held liable in this case for any injury or damages sustained by plaintiff's assignor, in consequence of defendant's train running at a speed greater than eight miles an hour, it must further appear that such injury was the direct result of said alleged cause. But, in order to find that the injury was such direct result, it is not necessary to find that it was all inflicted within the limits of said depot grounds. If the injury, or some portion thereof, was inflicted just without said grounds, but so near thereto that it was and is reasonably and fairly attributable to the rate of speed above eight miles an hour the train was running upon the depot ground, as the proximate cause, then you may find the defendant liable for such animals, so killed or injured, without, but adjacent to, said grounds, as well as for those animals, if any, killed or injured upon the depot grounds by like negligence on the part of

defendant. But such injuries, wheresoever inflicted, must be the direct result of the defendant's negligence, in order to entitle the plaintiff to recover; and, therefore, plaintiff cannot recover in this action for any animals killed or injured outside the depot grounds, which went outside before the coming of the train upon the depot grounds,—that is, the plaintiff cannot recover for animals killed or injured outside, unless the speed of the train, in excess of eight miles an hour, upon the depot grounds, frightened or forced or drove such animals, so killed or injured, beyond the boundary line of the depot ground. So, if you find from the testimony that said horses, or any of them, were struck, and killed or injured, at any point or place off the depot grounds, and that the defendant's said train was operated upon said depot grounds at a rate of speed in excess of eight miles an hour; then you may determine, from all the facts and circumstances of the case, whether said horses so struck, off the grounds, were upon the depot grounds at the time of the approach of said train, and its entrance upon said depot ground; and, if you find that they were there, it will be for you to further determine whether the killing and injury of said animals off said depot grounds was the direct result of the running of said train at a rate of speed in excess of eight miles an hour, upon said depot grounds; and, if you find that it was, then the negligence of defendant, and the injury resulting therefrom, are sufficiently shown. In other words, if you find that defendant's train was operated upon the depot grounds at a speed of more than eight miles an hour, and that said horses, being upon said depot grounds, were by the said speed of said train above eight miles an hour frightened or driven off said grounds upon another part of defendant's railway, and were there killed or injured by said train, then the right of the plaintiff to recover in this action would be the same as if said animals had been struck upon said depot grounds by said train, and killed or injured there. If you find from the evidence that

said horses, or any of them, had not been upon the depot grounds in question, or if, having been there, you find that prior to the coming of said train upon said depot grounds said animals had gone upon another portion of defendant's right of way, and were there killed and injured by said train, then plaintiff cannot recover for such animals, even if you find that said train was run across said depot grounds at a greater rate of speed than eight miles an hour, as such result would not be immediately linked with the defendant's negligence, or the injury directly attributable thereto."

It is urged that this instruction is erroneous, because under the rule announced by this court in the case of *Monahan v. Railway Co.*, 45 Iowa, 523, there can be no liability under the statute in any case, unless the stock are injured and killed upon the depot grounds. But that was a case where the injury occurred before the train entered upon the depot grounds. The defendant had the right to run its train at more than eight miles an hour until it reached the depot grounds. It is true, there is language in the opinion by which liability is stated to be limited to inquiries on the station ground. But here we have another illustration of the necessity of adhering to the very question before the court for determination. The instruction above cited is about as strong an argument as can be made in support of the idea that, where a law is violated, the violator should be held liable for the direct consequences of his unlawful act. If the language of the opinion in the cited case is to be held applicable to all cases, and limited to injuries actually inflicted upon animals on the station ground, a railroad company would not be liable if it should run through station grounds at forty miles an hour, and pick up an animal on the pilot, and carry it safely beyond the station grounds, and injure it by throwing it off at a place beyond the station. Such a construction of the statute would not be entertained by any court; and where, by excessive speed upon the station grounds, animals are stampeded, and run upon the

track, either by breaking down fences or otherwise, and, without checking the speed, are run down and killed, the cause and effect are so closely connected as that it may fairly be said that the unlawful speed of the train was the direct and proximate cause of the injury, and we do not think the court invaded the province of the jury in so instructing them.

IV. Brown's Station is in Clinton county, in this state, and the evidence shows that the herd law is in force in that county. The court instructed the jury, in effect, that if Powers, the owner of the horses, had them in a field enclosed with a fence reasonably sufficient to prevent them from escaping therefrom, he was not chargeable with contributory negligence in allowing the animals to escape. Counsel for appellee contend that, where the herd law is in force, the requirement that stock shall not be permitted to roam at large is absolute, and the mere fact that they were running at large precludes recovery. We do not think the position of counsel can be sustained. See *Pearson v. Railway Co.,* 45 Iowa, 497; *Doran v. Railway Co.,* 73 Iowa, 115; *Krebs v. Railway Co.,* 64 Iowa, 670; *Moriarty v. Railway Co.,* 64 Iowa, 696.

*3. ——: injury to stock at large : herd law: duty of stock-owner.*

V. One other question demands brief consideration. The court struck out an answer of a witness to the effect that Powers, the owner of the horses, stated after the accident that the bars were not sufficient to keep the horses in. This answer was properly stricken out, because it was not responsive to the question, and because it was immaterial. There was no dispute that the bars were not sufficient to keep the horses in the field. The fact that they got out of the field was better evidence of that than the statement of any witness. The question in dispute was whether the fence and bars were reasonably sufficient to restrain stock. We discover no prejudicial error in the record, and are united in the opinion that the judgment should be  AFFIRMED.

*4. ——: ——: sufficiency of fence: evidence.*