VIRGINIA M. DEANS, Adm'x, v. THE WILMINGTON AND
WELDON RAILROAD COMPANY.

*Negligence—Evidence—Trial—Jury.*

1. Where a witness standing upon the side of the track, three-fourths of
   a mile from the plaintiff's intestate, testified that he saw him lying,
   apparently helpless, as he thought, along the ends of the cross-ties,
   beyond the rails, when the engine that ran over and killed him
   passed the witness, running at twenty miles an hour: *Held*, that
   the Judge should have allowed the jury to determine whether the
   engineer could, by ordinary care, have discovered, from his ele-
   vated position on the engine, that intestate was lying helpless on
   the track, in time, by prompt and strenuous effort, to have saved
   the life of the latter without putting his passengers in jeopardy.

2. If the engineer discover, or, by reasonable watchfulness, may dis-
   cover, a person lying on the track asleep, or drunk, or see a
   human being who is known by him to be insane, or otherwise
   insensible to danger, or unable to avoid it, upon the track in his
   front, it is his duty to resolve all doubts in favor of the preserva-
   tion of life, and immediately use every available means, short of
   imperiling the lives of passengers on his train, to stop it.

3. In such a case, the jury were at liberty to exercise their own common
   sense, and use the knowledge acquired by their observation and
   experience, without direct testimony from expert witnesses, in
   determining how many feet or yards of the track the engine must
   have traversed before the engineer could have put a complete stop
   to its movement without danger to those who were on the train.

4. Though the facts may be undisputed, yet, if two reasonable and fair-
   minded persons might draw inferences from them so different that,
   according to the conclusion of fact reached by one, there would
   be negligence, while that deduced by another would show the
   exercise of ordinary care, then the issue should be submitted to
   the jury.

5. The doctrine laid down in *Gunter* v. *Vickes*, 85 N. C., 310, and fol-
   lowed in a line of cases since, is in conflict with the principle
   enunciated in *Herring* v. *Railroad*, 10 Ired., 402, and the latter
   case is overruled.

CIVIL ACTION for damages, tried before *MacRae, J*, at March Term, 1890, of WAYNE Superior Court.

The issues were—

1. Was B. F. Deans killed by the negligence of the defendant?

2. Did he, by his own negligence, contribute to his death?

3. What damage, if any, is the plaintiff administratrix entitled to recover?

The plaintiff introduced the following evidence:

W. A. Deans testified that deceased was between thirty-three and thirty-four years old.  "I went to the scene of the accident about 2 P. M.—half an hour after it occurred.  The train usually passed that spot about 12 M.  I found B. F. Deans (plaintiff's intestate) lying on the ground across the ditch, about ten feet from the track; his head was mashed to pieces, and there were signs on the rails of his having been run over on the side of the track on which the engineer sat in his cab.  It is two miles from Goldsboro to the first curve in the road.  The place where he was killed was between 300 and 400 yards from the first curve towards Goldsboro; there is gravel of a light color on the foot-path on the outside of the rails, and people walk there.  It was a showery day.  I think I could have seen a man three-quarters of a mile off.  Deceased had on a dark overcoat, but I don't recollect the color of his pants.  The path I spoke of is between the ditch and the end of the cross-ties, and the road-bed is gravel, with a white sandy gravel.  I don't know that it was slippery where he was killed."  Witness further testified as to the value of the life of the intestate.

On cross-examination, the witness stated that deceased drank whiskey at times; he was not a drinking man during crop-time, but after the crops were laid by, and he had realized therefrom, he would sometimes get on a spree, especially about the Christmas holidays, but did not get drunk every time he came to town.  "When I got to his body

on the day of the accident, to-wit, December 24th, 1887, one
Pate had a small bottle of whiskey, and it looked as if about
a drink had been taken out, and there was a broken glass
on the ground which had the smell of whiskey about it.
Deceased lived about a mile from the railroad.    There is a
county road running parallel from Goldsboro in that direc-
tion, to the deceased's house, which is a little nearer than
the path ".(above described).

P. Taylor testified: "On December 24th, 1887, I was
engaged at the water-station of defendant company; saw
deceased early that morning pass the station, going to town;
people pass that way; he came back between 1 and 2 P. M.,
and I.had some talk with him—say about twenty-five min-
utes; he went towards home on the railroad, and I went
into the section-house and sat down; the last time I saw him
he was lying on the road-bed, before the train came, with
his feet towards the ditch; I looked towards town, and saw
the train coming between the station and water-tank; when
the engineer (Morris) came along I motioned to him three
times; he was sitting in his seat, looking at me, when I
motioned, but he did not seem to understand what I meant;
I was standing on the ditch-bank."    (Witness motioned by
raising his hand toward the engineer, who was looking out
the window of his cab.)

On cross-examination: "I think deceased was about three-
quarters of a mile from me when I saw him; it had been
raining some, the wind was blowing—a cold, rainy day, but
not freezing; but a man could see very well, though it was
a cloudy day; the rails were wet.    When deceased left me
near water-station, I saw him about a hundred yards from
me, walking on the narrow path outside of the cross-ties; he
had a pint tickler of liquor, and offered me some, but I
would not drink; it was about two-thirds full, and he seemed
to have been drinking, but seemed to know his business; he
walked steadily when he left me; he took a drink at the

water-station, and another when he left me, in about fifteen minutes; the train that killed him did not stop at the water-tank; I think the train was running about twenty miles an hour; have seen trains run much faster ; never saw anyone motion at the engineer; I knew the engineer; had been at the water-tank about twelve months, and as the train passed that day the engineer blew the whistle when it got near to deceased; I could not see the deceased when the whistle blew; when I last saw him he was lying across the road-bed, not between the rails, but between the ends of the cross-ties and the ditch; I did not see his head on the rail; if I had, I would have signalled down the engineer, and stopped the train; I would have done this by placing my hat on the track; I did not do that because I did not know his head was on the track."

Upon the conclusion of the plaintiff's evidence, his Honor .intimated that he would instruct the jury to find the first issue in the negative, and, in deference thereto, the plaintiff submitted to a nonsuit and appealed.

*Mr. C. B. Aycock,* for plaintiff
*Messrs. W. R. Allen* and *Isaac F. Dortch,* for defendant.

Avery, J.: When this Court, in the case of *Gunter* v. *Wicker,* 85 N. C., 312, adopted the rule laid down in *Davies* v. *Mann,* 10 M & W. (Exc.), 545, that "notwithstanding the previous negligence of the plaintiff, if, at the time when the injury was committed, it might have been avoided by the exercise of reasonable care and prudence on the part of the defendant, an action will lie for damages," it was thenceforth aligned with one of two classes, holding widely divergent views as to the effect of contributory negligence on the part of a plaintiff, under certain circumstances, upon his right of recovery. That ruling has been expressly approved

107—44

in a large number of later cases, and is now firmly grounded
as a part of our system, in so far as it is distinct from that
of any other Courts where the common law of England
prevails. *Farmer* v. *Railroad*, 88 N. C., 564; *Turrentine* v.
*Railroad*, 92 N. C., 638; *Aycock* v. *Railroad*, 89 N. C., 321;
*Troy* v. *Railroad*, 99 N. C., 298; *McAdoo* v. *Railroad*, 105
N. C., 140; *Daily* v. *Railroad*, 106 N. C., 301; *Lay* v. *Railroad*,
106 N. C., 404; *Bullock* v. *Railroad*, 105 N. C., 180; *Carlton*
v. *Railroad*, 104 N. C., 365; *Wilson* v. *Railroad*, 90 N. C., 69;
see also, *Wymer* v. *Wolf*, 52 Iowa, 533; *Railroad* v. *Kellon*,
92 Ill., 245; *Meeks* v. *Railroad*, 56 Cal., 513; *Kenyon* v. *Railroad*, 5 Hum. (N. Y.), 479.

In those States where the very opposite view was taken,
it was held that where one went upon the track of a railroad company, at a point other than a crossing where the
public have a right-of-way, without special license, he was a
trespasser, and could not recover for any injury inflicted
upon him through the negligence of such company's agents
or employees unless it was wanton. *Mulherrin* v. *Railroad*,
81 Penn., 366; *Rounds* v. *Railroad*, 64 N. Y., 129; *Railroad*
v. *Sinclair*, 62 Ind., 301; *Donaldson* v. *Railroad*, 21 Minn.,
293; Beach on Con. Neg.; *Express Company* v. *Nichols*, 33
N. J., 434.

In delivering the opinion in *Manly* v. *Railroad*, 74 N. C.,
655, Justice BYNUM foreshadowed, by an intimation the subsequent adoption by this Court, in *Gunter* v. *Wicker, supra*, of the
principle stated in *Davies* v. *Mann, supra*, and, after it had been
approved in so many well considered opinions, it became
apparent that it would be illogical and inconsistent to
adhere to the rule laid down in *Herring* v. *Railroad*, or
the interpretation generally given to Judge PEARSON's
language by the leading text-writers of this country. In
that case, the engineer might have seen two little negroes
who were lying on the track asleep, according to conflicting
testimony, from two hundred yards to a half mile, before

his engine reached them. He did not actually discover that the children were asleep till he was within twenty-five or thirty yards of them. The testimony showed, also, that the train could have been stopped by the engineer within from seventy-five to one hundred yards. The Judge below charged the jury that the railroad company was not liable for the neglect of the engineer to keep a lookout along the track except when he was approaching a crossing of a public road over the railway, and was not responsible for his failure to use the appliances at his command to stop the train until he actually saw the children asleep on the track at a distance of twenty-five or thirty yards. This instruction was sustained by the Court in the face of the fact that the counsel for the plaintiff cited and relied upon *Davies* v. *Mann, supra.* The Court failed even to advert to the doctrine laid down in that case.

It must, therefore, have been the settled purpose of this Court, when the doctrine of *Davies* v. *Mann* was approved, to modify this rule whenever the point should be plainly presented, and that contingency has never arisen until the present time. We have reiterated the principle that where an engineer sees a human being walking along or across the track in front of his engine, he has a right to assume, without further information, that he is a reasonable person, and will step out of the way of harm before the engine reaches him. *McAdoo* v. *Railroad*, 105 N. C., 153; *Daily* v. *Railroad, supra; Parker* v. *Railroad*, 86 N. C., 221. It is not negligence in an engineer to act, in the absence of specific information, on the presumption that a man who is apparently awake, and is moving, is in full possession of all of his senses and faculties

But it has been repeatedly held by this Court that it is the duty of an engineer while running an engine, to keep a careful lookout along the track in order to avoid or avert danger, in case he shall discover any obstruction in his front,

whether at a crossing or elsewhere. *Bullock* v. *Railroad, supra; Carlton* v. *Railroad, supra; Wilson* v. *Railroad, supra.*

If the engineer discover, or by reasonable watchfulness may discover, a person lying upon the track asleep or drunk, or see a human being who is known by him to be insane, or otherwise insensible to danger, or unable to avoid it, upon the track in his front, it is his duty to resolve all doubts in favor of the preservation of life, and immediately use every available means, short of imperiling the lives of passengers on his train, to stop it. *Railroad* v. *Miller,* 25 Mich., 279; *Railroad* v. *St. John,* 5 Sneed (Tenn.), 504; *Railroad* v. *Smith,* 52 Tex., 178; *Isbell* v. *Railroad,* 27 Conn., 393; *Mecks* v. *Railroad,* 56 Col., 513. For similar reasons we have held that the test of negligence where live-stock is killed or injured by a train is involved in the question whether the engineer, by keeping a proper lookout, could have discovered the animal in time to have prevented the injury. *Carlton* v. *Railroad* and *Watson* v. *Railroad, supra.* In *Bullock* v. *Railroad* the same criterion was applied where it was alleged that an engineer might have discovered that a wagon was stalled at a crossing in time to prevent injury by stopping his train.

The pertinent portions of the testimony in the case before us may be gathered and grouped as follows, bearing in mind always that if, in the most favorable aspect for the plaintiff, there was a question raised that it was the exclusive province of the jury to determine, then there was error. A witness on the roadside could see plaintiff's intestate lying on the side of the track three-fourths of a mile distant. He could not tell, from his position and at that distance, whether he was lying across the rail, but thought his head was on the road-bed beyond the ends of the cross-ties; when the engineer was passing, the witness waved his hand at him as a signal to be watchful. The engineer looked, but did not seem to comprehend what was meant. The train was

running at the rate of about twenty miles an hour. The witness who made the signal had been engaged at the water-tank for about eleven months, and had been often seen there by the engineer, but had not made his acquaintance.

Could the engineer, by ordinary care, have seen that the plaintiff's intestate was lying apparently helpless upon the track, with his head inside the rail, in time to have stopped the train before it reached him? Defendant's counsel contended that there was no testimony offered to show within what distance the engineer, by using all available appliances, could have stopped the train, and, therefore, the jury could not consider the question whether he could have avoided inflicting the injury. With the data furnished by the evidence it was the province of the jury, either with or without additional light from expert witnesses, to determine how many feet or yards of track the train must have traversed after the engineer reversed his engine and blew brakes before he could have put a complete stop to its movements without damage to those on the train. The jury were at liberty to exercise their own common sense, and to use the knowledge acquired by their observation and experience in every-day life in solving the question, whether the engineer, in the exercise of due diligence, might have discovered, from his elevated position on the engine, the fact that plaintiff's intestate was lying helpless across the rail, and whether, by prompt and strenuous effort, he could have saved his life, without putting his passengers in jeopardy. *Railroad* v. *Miller*, 25 Mich., 292; *Nerbus* v. *Railroad*, 62 Cal., 322. Courts and juries acting within their respective provinces must take notice of matters of general knowledge and use their common sense where the evidence makes the issue of law or fact depend upon their exercise. Best on Ev., 262, note F; Wood's R. L., 1064, note.

If the facts had been undisputed, and such that only one inference could have been drawn from them, it would have

been the duty of the Court to decide whether there was negligence. But upon the testimony before them in this case, the Judge should have left the jury to say whether they could deduce satisfactorily from the evidence the inference that the engineer discovered, or could, by ordinary care, have discovered, that plaintiff's intestate was lying, apparently insensible, upon the track, in time to have avoided the injury, or whether they thought a preponderance of testimony was in favor of the inference that defendant's employees could not have averted the accident by exercising the diligence required by law. *Smith* v. *Railroad*, 99 N. C., 241; *Troy* v. *Railroad*, 99 N. C., 298; *Railroad* v *Picksley*, 21 Ohio, 654. Men of fair and reasonable minds might have drawn different conclusions from the evidence in this case, although there is no material conflict between the testimony of the witnesses examined, and, therefore, the jury should have been allowed to determine whether the engineer might have ascertained, by keeping a proper lookout, the real condition of the deceased, admitting, even, that he was drunk, and by timely exertion have saved him harmless, without peril to the passengers or other persons on the train. 2 Thompson on Neg., 1178 and 1179; Wood's R. L., § 319, p. 1259.

Judge Cooley (in his work on Torts, p. 670) says: "If the case is such that reasonable men, unaffected by bias or prejudice, would be agreed concerning the presence or absence of due care, the Judge would be quite justified in saying that the law deduced the conclusion accordingly. If the facts are not ambiguous, and there is no room for two honest and apparently reasonable conclusions, then the Judge should not be compelled to submit the question to the jury as one in dispute."

The rule applicable to our case is that, though the facts may be undisputed, yet, if two reasonable and fair-minded persons might draw inferences from them so different that

according to the conclusion of fact reached by one there would be negligence, while that deduced by another would show the exercise of ordinary care, then the issue should be submitted to the jury.

We think that his Honor erred in declaring the testimony insufficient, in any aspect of it, to warrant the inference on the part of the jury that the defendant might have prevented the injury by the exercise of ordinary care. There must be a new trial.

Error.                                         New trial.