R. G. McQUAY v. THE RICHMOND AND DANVILLE RAILROAD
COMPANY.

*Negligence—Evidence—Instructions.*

If the evidence upon an issue of negligence is direct, leaving nothing
to inference, and if believed, established the fact sought to be
proved, the Judge may instruct the jury that if they believe the
witness they should find for the plaintiff, or defendant, as the
case may be; but where the testimony is in conflict and capable of
different interpretations, it should be submitted to the jury with
appropriate instructions to consider all the circumstances in arriv-
ing at a verdict.

CIVIL ACTION, to recover damages alleged to have been
received by reason of the negligence of defendant's agents
and servants, tried at Spring Term, 1891, of MECKLENBURG
Superior Court, *Merrimou, J.*, presiding.

The plaintiff testified : "On the 18th of November, 1889,
I was in Charlotte; came in a buggy; I had business beyond
defendant's crossing of East Second street. This street is
about sixty feet wide, and defendant has some ten or twelve
railroad tracks across it at this point. As I approached the
first track there was a train loaded with lumber across it; I
waited a few minutes till it moved off slowly. When this
train was out of the way, I started across; there was one
box-car, by itself, about two-thirds of the way across the
street on the north side going east; after I had gone around
that car, there were four or five tracks across the street and
then there was a space. On next line of tracks there were three
or four box cars standing on the south side of the street.
These box cars were standing far enough across the street to
cut off the view of any danger beyond. I had to go around
these cars. They were at least half-way across  I went
around south end of first car and north end of the second.
After I got around the second car, I was right on defendant's

engine. It was on the east side of the tracks and furthest away from where I entered upon the tracks. I stopped a few moments; do not know how long, not more than a minute or two. The engine backed off north. It was standing square across the track and there was no chance of going around it. When they had cleared the street and I started, the steam commenced exhausting from the engine. The mare I was driving did not seem to mind the engine much until the steam began to exhaust, and then she became unruly and unmanageble. She ran from the track and ran into a mule. The mule was a little piece from the track, twenty-five or forty steps, and was going the same way I was. The buggy wheel struck the mule ; the mare tore loose and tore the buggy to pieces until it was worth nothing, and threw me out on my face ; the mare ran on sixty or seventy-five yards and stopped on a rock-crossing and broke one of her fore-legs; she was worth one hundred and twenty-five dollars; after her injury, she was not worth more than ten or fifteen dollars. The buggy was worth forty dollars. After I passed the second car, I was in twenty or thirty feet of the engine. The box cars obstructed my view. The engine was standing still when I first saw it; it moved very soon after I stopped. The engineer was sitting in the window looking towards me. This was right at the depot. There is no other crossing near that place. There is one at Trade street and at the Institute. I had crossed there before. The mare was never scared at the train, but when steam began to exhaust she took fright."

Henry Holt, for defendant, testified : "I am flagman at East Second street; was there when plaintiff crossed. Just as soon as the engine pulled over, the plaintiff passed right on across. There was nothing to prevent plaintiff from seeing the engine cross the street. Mr. Mebane, one of the shifting engineers, was running the engine and was about one hundred yards down the track, above the crossing, when plaintiff

crossed. The engine was making a noise just like it usually did. There was but one car on the street. It was on the C., C. & A. track. After the plaintiff crossed the C., C. & A. there was nothing to prevent his seeing. There were a few cars on the Augusta track, but none between him and the engine. Plaintiff was clear across all the tracks before his horse began to run. He ran down against a mule and broke the buggy. The engine was shoving cars back up towards Trade street. The cars crossed the street first and then the engine. I did not tell plaintiff to stop, did not flag him, because he was crossing over and there was nothing in the way. I had the flag in my hand; the track was clear; there was nothing to hinder a man from going across. The engine was one hundred yards above, going back—it was just exhausting, not more than common, not more than enough for the engine to do her work. I did not hear the engine making noise more than common."

There was further evidence offered by each party in support of these witnesses.

Among other instructions asked by defendant was the following :

8. " If the jury believe the evidence, the plaintiff could have extricated himself from any danger after he saw the engine, and if he could have done so and failed to do it, and took the risk of the engine's frightening his horse, he cannot recover unless the engine made unusual and unnecessary noises, and if they believe no such unusual and unnecessary noise was made, the answer to the second issue should be, Yes."

The Court declined to instruct the jury, that "if they believed the evidence, the plaintiff could have extricated himself from any danger after he saw the engine," but told them, that it was for them to say, after the evidence, whether "the plaintiff could have extricated himself from any danger after he saw the engine." The other part of defendant's

eighth special instruction was given, and defendant excepted to the modification made by the Court.

Another special instruction prayed for by defendant was—

9. "If the jury believe the evidence of plaintiff's witness Levi Presson, the plaintiff cannot recover."

This instruction was also refused, and defendant excepted.

The jury answered the first issue, "Yes." The second issue, "No," and the third issue, "$400." There was judgment accordingly, and defendant appealed.

*Mr. P. D. Walker,* for plaintiff.
*Mr. G. F. Bason,* for defendant.

SHEPHERD, J.: The defendant conceded that it was guilty of negligence, but alleged that the plaintiff, by his own negligent conduct, had contributed to the injury of which he complained. The only exception insisted upon is the refusal of the Court to charge the jury that "if they believed the evidence, the plaintiff could have extricated himself from any danger after he saw the engine."

"When the evidence is direct, so as to leave nothing to inference, and the evidence, if believed, is the same thing as *the fact* sought to be proved, the Judge is at liberty to instruct the jury, that if they believe the witness, they should find for the plaintiff or for the defendant?" *Gaither* v. *Ferebee,* 1 Winst., 310.

Applying this principle to the testimony before us, we are of the opinion that the ruling of his Honor was correct, and that the proposition embodied in the instruction prayed for was an inference to be made by the jury from all the circumstances in evidence. We think that "two reasonable and fair-minded men" (*Deans* v. *Railroad,* 107 N. C., 686) might have reached different conclusions, or at least have been left in serious doubt as to whether the plaintiff could have extricated himself, as alleged.                    Affirmed.