GARSIDE v. NEW YORK TRANSP. CO. (two cases).

(Circuit Court, S. D. New York. July 3, 1906.)

1. HIGHWAYS—CONTRIBUTORY NEGLIGENCE—PERSON CROSSING FROM STREET CAR TO CURB—QUESTION FOR JURY.

A passenger alighting from a surface street car is not bound, as matter of law, to look in both directions along the street before starting to cross the space between the car and the curb, but the question whether the failure to so look constituted negligence is one of fact, to be determined by the jury under all the conditions and circumstances shown by the evidence.

[Ed. Note.—For cases in point, see vol. 25, Cent. Dig. Highways, §§ 460, 473.]

2. SAME—INJURY TO PERSON ON STREET—ACTION FOR DAMAGES.

Plaintiff alighted from a street car, and after taking two or three steps was struck and injured by defendant's automobile. Her testimony was that when she stepped off she looked along the street in front of the car, and seeing no vehicles approaching started to cross diagonally to the curb at the crossing, which was a short distance behind the car, when the automobile caught her dress, and pulled her down backward and ran against her. The machine had just crossed in front of the car from the opposite side of the street, which was obstructed, and came behind plaintiff. Defendant contended that plaintiff started to cross the track behind the car, and, meeting another automobile which was following the car, stepped backward in front of the machine, which struck her. The speed of such machine was in dispute. Held, that such issues of fact required the submission of the case to the jury; that accepting defendant's contention as correct, plaintiff was not necessarily chargeable with contributory negligence, and, even if so, it would not prevent her recovery if the driver of

defendant's machine saw or should have seen her dangerous position between the two machines in time to stop his own before striking her.

[Ed. Note.—For cases in point, see vol. 25, Cent. Dig. Highways, §§ 460, 473.]

3. HUSBAND AND WIFE—INJURY OF WIFE—RECOVERY BY HUSBAND FOR LOSS OF SERVICES.

To entitle a husband to recover for the loss of his wife's services while she was incapacitated by reason of an injury due to defendant's negligence it is not necessary to show that he employed or became obligated to pay for the services of another to supply her place as housekeeper.

[Ed. Note.—For cases in point, see vol. 26, Cent. Dig. Husband and Wife, § 768.]

## At Law.

Motions by defendant to set aside the verdict of the jury and for a new trial in each case, on the grounds that the verdict is contrary to the law and evidence and unsupported thereby, and on the exceptions to the ruling of the judge in refusing to direct a verdict for the defendant at the close of plaintiffs' case and again at the close of the whole evidence. No question of error is assigned by defendant on the rulings in rejecting or admitting evidence, or in the charge to the jury, and all such objections, if any, are waived.

William Victor Goldberg, for plaintiffs.
Arthur K. Wing (Mr. McIntyre, of counsel), for defendants.

RAY, District Judge. Ginerva Garside, the plaintiff in the one action, is the wife of John R. Garside, the plaintiff in the other. Ginerva Garside sues to recover damages for injuries to her caused by the alleged negligence of the defendant, the New York Transportation Company, in running upon her with its electrical automobile near the intersection of Sixth avenue and Thirty-Fifth street in the city of New York on the 10th day of January, 1903. The husband, John R. Garside, brings his action to recover the damages he alleges he sustained by reason of the same negligence, to wit, the value of the services and society of the wife while she was suffering from such alleged injuries, and which he claims he lost because of such negligence. By written stipulation filed and agreement made in open court the two actions were tried as one, but separate verdicts were rendered. The jury assessed the damages of Mrs. Garside at $4,000, and those of her husband, John R. Garside, at $1,000. Mr. Garside is a large manufacturer of shoes in the city of New York, and "keeps house" with his wife. She managed the household, and looked after its affairs, the servants, and children, and did some manual labor in connection therewith. They had a nurse for the children at times, but none at the time of the transaction in question. Prior to the accident Mrs. Garside was a strong active woman, in good health, and accustomed to protracted exercise in walking long distances etc., the mother of four children, and about 36 years of age. On the day in question, January 10, 1903, which was Mr. Garside's fortieth birthday, Mrs. Garside left her home a little before 2 o'clock p. m., and went to Huyler's on Forty-Second street, between Fifth and Sixth avenues, and then took a closed Sixth avenue surface car, and rode down to Thirty-Fifth street, on her way to Macy's store which is on the west side of Broadway, between Thirty-Fourth

and Thirty-Fifth streets. She was dressed in the street attire of the fashion of the day, and the skirt was of such length that the trail, if not gathered and held up by the hand when the wearer was walking, would drag a little. This Sixth avenue car, on which Mrs. Garside rode to Thirty-Fifth street, ran south, and stopped on the westerly surface track of the avenue a few feet south of what would be the southerly or south side cross walk of Thirty-Fifth street, if a cross walk were actually constructed, for passengers to get on and off the car. This was the usual and regular stopping place for southbound cars on this as well as other avenues in the city of New York. At the locality in question there is an elevated railroad, supported by iron columns standing in the avenue about two feet outside of the outer rail of the surface car tracks, and Sixth avenue has two of these surface tracks, or four rails at suitable distances apart, and south-bound cars run on the westerly track, and north-bound cars run on the easterly track. At or near Thirty-Fourth street, Broadway crosses Sixth avenue diagonally, forming a triangle, which is bounded on the west by Broadway, on the north (the base) by Thirty-Fifth street, and on the east by Sixth avenue. The apex is not far from Thirty-Fourth street. It is 200 feet from Thirty-Fourth to Thirty-Fifth street. It is about 100 feet from the westerly side of Sixth avenue to the easterly side of Broadway on the north side, or along the base of this triangular space described. That space, fenced in and forming a small park, is surrounded by a walk, and a person alighting from a south-bound surface car at Thirty-Fifth street at the point mentioned, and desiring to cross to Broadway, and thence to Macy's, would naturally and almost necessarily pass to the walk on the west side of Sixth avenue, and thence along the walk at the base of this triangle, which is in fact the south sidewalk of Thirty-Fifth street. North of Thirty-Fifth street, at this place, between Thirty-Fifth and Thirty-Sixth streets and Sixth avenue and Broadway, stands the Herald Building. Sixth avenue is about 60 feet in width from curb to curb, and the distance between the curb line on the west side of Sixth avenue and the westerly or south-bound surface car tracks is not more than 20 feet. From curb line to the elevated pillars it is 18 feet. At the time in question there stood in Sixth avenue, next to but outside the curb, and extending nearly up to Thirty-Fifth street, lacking not over two feet, an owl wagon or night restaurant on wheels. This was about 6 or 7 feet wide, and some 12 or more feet in length, and narrowed the street between a car on the westerly surface track and the owl wagon to not more than 14 feet. Between the line of iron columns of the elevated road and the owl wagon the distance was not more than 11 or 12 feet. One of these columns or pillars was about opposite the south end of the owl wagon. Just south of this owl wagon, and but a few feet distant from it in the avenue, stood a furniture van or wagon, which occupied as much or more space as did the owl wagon. These were in plain sight of any person passing up or down Sixth avenue, and could be seen for a long distance, and had been there months. This was a pleasant day, and the accident occurred shortly after 2 o'clock. Ordinary ve-

hicles, such as automobiles or an ordinary carriage, could not at speed pass each other here safely. There was barely room to pass a person on foot, who was on the watch, safely. On alighting from the car, at the rear and on the west side thereof, according to her narrative of the transaction, Mrs. Garside faced and glanced south, and found that there was nothing in sight in the street, and then faced west, and found she had to move northwest in order to reach the curb, or move north till she had passed this owl wagon. She changed her purse and parcel from her right to her left hand, and gathered up her skirts with her right hand, and then took two or three steps in a northwesterly direction, when she felt herself pulled backward. Thereupon she screamed. She says:

"I felt myself pulled back, and I screamed. I was not hurt, I simply screamed from instinct, I think. Then I was pulled further back, and down and down onto my knees, and something hit my right hip, and then I screamed again. Something had caught me, and I screamed, and I found myself suddenly released, and something backed off my clothes."

She was then picked up, and turned around, when she saw this automobile of the defendant right there behind her. She says the wheel, or whatever it was, hit her, and "hurt me very severely, so that when it released me I sat down in a heap, sort of, and somebody picked me up—lifted me up." They attempted to put her in this automobile behind her, but she objected, and was then taken across Sixth avenue to Hall's drug store. Her skirt, worn by her that day, was produced in court, and, without objection, with the skirt on she described just how the transaction occurred. The skirt was torn from the waistband in the rear, and torn or split crosswise at the knees. She reiterated that she got off the car facing directly south, and that the force used in pulling her back and down was such that her knees were forced through the skirt, which was of strong material. At this time there was a temporary blockade of Sixth avenue on the easterly side, caused by a heavy ice wagon backed up to the east side curb, about opposite the rear of the car from which Mrs. Garside alighted, and this had delayed the movement of cars on the easterly or north-bound track to such an extent they were at a standstill for a few minutes. The defendant's automobile, an electrical vehicle, driven by its employé, one Joseph A. Carey, with whom one Daniel J. Lenahan, a footman for a Mr. Flower, was riding, came up Broadway, and turned into Sixth avenue at Thirty-Fourth street, about, and proceeded north from there on the east side at least half way to Thirty-Fifth street, and it is claimed further, when, seeing the block, without stopping or slackening its speed, it turned to the west across the surface tracks to the westerly side of the avenue, and then turned northerly, and passed up the avenue on the westerly side, and passed between the car from which Mrs. Garside had alighted on the east and this furniture van and owl wagon on the west, until it came in contact with Mrs. Garside. The plaintiffs contend that Mrs. Garside, having looked to the south and picked up the trail of her dress, was proceeding to cross in a diagonal direction from the place of alighting to the curb or walk on the west side, as she had the right to do, and as she was

compelled to do in order to avoid this van and owl wagon. That, as she had taken a step or so to the northwest and towards the curb just north of this owl wagon, the defendant's vehicle, driven by Carey, came suddenly upon her from the south at dangerous speed, and carelessly and negligently driven and managed, so as not to be under proper control, and caught in her dress skirt, and pulled her back and then down, and that as she went down on her knees, held and pulled by the vehicle, it was forced against her right hip, and she was severely injured. The claim is that crossing from the east to the west side of Sixth avenue the vehicle was run carelessly at a high rate of speed, so as not to be under proper control, and that it crossed the avenue suddenly in front of the car from which Mrs. Garside alighted, either before it started or just after, without warning and without a slackening of speed. That the driver knew and had good and sufficient reason to apprehend that persons would be in the avenue at that point getting off and on the car, and passing to and from the curb or sidewalk, and that to run the vehicle into such a place at such a time at such rate of speed was a negligent act.

That Mrs. Garside was pulled down and run upon or against by defendant's vehicle cannot be doubted. There was an abundance of evidence that such was the fact. That it crossed from the east to the west side of the avenue but a very short time before striking Mrs. Garside was not disputed. No warning was given and speed was not slackened. There was a difference between defendant's witnesses who spoke on the subject and plaintiff's as to the speed of the vehicle; defendant's placing it at about three miles per hour, and plaintiff's at five or six miles per hour. The blockade in the east side of Sixth avenue was about opposite where the street car stopped, and about 30 to 60 feet south of the corner of the avenue and Thirty-fifth street. Defendant's vehicle was well up to it before it crossed, and probably passed to the west side but a short distance south of where Mrs. Garside stood when struck, possibly some 60 or 70 feet, although there was some evidence, the distance was less, and Mrs. Garside and the other persons who alighted from the car were probably hidden from the driver of the vehicle until it was within 30 to 60 feet of them. If the vehicle was proceeding at the rate of seven feet per second, as claimed, at such a place, under such circumstances and conditions, plainly visible and reasonably to be anticipated, the jury was amply justified in finding negligence on the part of the driver. The driver of the car and the footman with him admit they saw the street car coming south, saw it stop, and claim they saw Mrs. Garside alight. The footman says two others got off at the same time, and that Mrs. Garside was run upon or against as these persons were crossing to the westerly curb of the avenue. It was for the jury to say what the speed was and what the conditions were as the electrical vehicle passed to the westerly side, and whether, under the circumstances, the vehicle was being run at a negligent rate of speed and was negligently managed. At such a time and in such a place on that side of the avenue it was incumbent on the driver to proceed with great care and caution, having his vehicle well

under control, and whether or not he did so was a question for the jury. Mrs. Garside was corroborated by witnesses who stood just across the street, and even looking at her as she alighted from the car. It is true one or more of them say, in substance, she appeared to step backward, but as this was at the time defendant's vehicle came up to or upon her, and, as she says, caught her dress and pulled her backward, it was for the jury to say whether she stepped backward to the westward at all. It well might be that this compulsory movement was mistaken by these witnesses for a voluntary one on the part of Mrs. Garside.

The defendant contended that there was no fault on the part of the driver, and that the accident to Mrs. Garside was the result of her own negligence in backing into the defendant's vehicle, or that, even if the driver was negligent, she was also negligent, and that her negligence contributed to her injury, and therefore she cannot recover. The contention is that when she descended from the car she turned to the north and then to the east, and moved as if to go eastwardly across the surface tracks; that as she did this she was confronted by a very rapidly moving gasoline automobile going south on this surface track, following the car from which Mrs. Garside had alighted, which gave warning by "tooting" its horn, and that Mrs. Garside stepped back without looking behind her, and stepped directly in front of the right front wheel of defendant's vehicle, which was then proceeding so slowly and carefully up the avenue that it was brought to a dead stop the moment Mrs. Garside backed into it. The evidence that any such thing occurred was of a doubtful and suspicious character. There was considerable evidence that when Mrs. Garside was struck the car stood where it did when she alighted, and even the driver of defendant's vehicle finally said it was but just getting in motion. As the defendant proved that one or two other cars stood on the easterly track, and there was a blockade of the entire street beyond, and there was no room for a vehicle going south to pass between the cars, the jury was justified in finding that nothing of the kind occurred. More than one eyewitness, paying attention, said that no automobile passed to the south of Thirty-Fifth street at or near that time, or came down the avenue to the place of the accident. But, even if this did occur, it was not necessarily negligence on the part of Mrs. Garside that would prevent a recovery if she did step back to avoid an automobile going south, and came into contact with defendant's vehicle going north on the westerly side, if that vehicle was not under proper control, was being driven at a negligent rate of speed, and did not stop when its driver saw, or, in the exercise of ordinary care, ought to have seen, the perilous position of Mrs. Garside. She was rightfully in the avenue, and had a right to go east or west, proceeding with due care. If she was suddenly confronted with a rapidly moving vehicle going south at a rapid rate of speed, and defendant's driver saw this, and that she must step back quickly to avoid it, he was not justified in proceeding, being within some eight or nine feet of her, if he could see that collision with her and consequent injury to her would be the probable consequences. If, under all

the circumstances and existing conditions, Mrs. Garside did the best she could to avoid the danger, and defendant's driver, seeing the situation, negligently continued on when he might have stopped, and ran against her as she backed to escape the danger in front, the jury was justified in finding that the action of Mrs. Garside was not such contributory negligence as would preclude a recovery. The rule of law is well settled that if a person by negligence gets into a place of danger, one seeing him in that position is bound to exercise care and caution to avoid doing him injury. The negligence of the one does not justify negligent acts by the other, knowing the situation, which if not done would avoid or obviate the danger and consequent injury. On this subject the court charged the jury:

"If as Mrs. Garside moved from the car where she alighted, northerly, or even somewhat easterly, if she did, having looked, as she says, first south, and not seeing anything coming from that direction, she was confronted by an automobile as she moved northerly and easterly, coming south on the westerly car track of Sixth avenue, and it was so close to her that it made it necessary for her step backward to avoid it as it passed, and the driver of the defendant's automobile was then substantially up with her or near to her, and about to pass her, only three or four feet west of that car track—you heard the distance described, how far west it was—it is for you to determine the distance, whether it was only three or four feet west of that car track. If the driver of that vehicle of the defendant could see that she was to be necessarily between the two automobiles as they passed each other within that narrow space of three, four, or five, or six feet, as the case may have been, and could see that an emergency existed in which the plaintiff, Mrs. Garside, was required to act quickly, and was required to avoid the automobile coming from the north, then if the driver of the defendant's automobile could and did see, or ought, in the exercise of ordinary care to have seen, that Mrs. Garside must move to avoid the one coming south, and that it was imminently dangerous to her to be inclosed between the two moving automobiles as they passed each other—the one moving north and the other south—on account of the narrow space in which she would be inclosed, and that in avoiding the one moving south she would probably be struck, or must be struck, by the one he was driving—if he could see that and did see it, or if, in the exercise of ordinary care and diligence, within the rules I have stated, he ought to have seen it— then it was his duty to stop the automobile he was driving, if he could, the moment he saw the dangerous and critical situation, if it was such. It is for you to say. If such was the condition, and Carey actually saw and apprehended the situation, or, in the exercise of ordinary care under the conditions and surroundings he ought to have seen and apprehended the situation and danger, and failed in his duty to stop the automobile when he might have done so, then the plaintiff, Mrs. Garside, was not necessarily guilty of contributory negligence which would prevent recovery, if she did the best she could in the emergency and under the circumstances, even if she did necessarily move backward to avoid the automobile going south, and in so doing made a mistake, if the automobile going south was there, and she may recover if you find the accident and injury to her was caused solely by the negligence of Carey, the driver of the defendant's auto, in not stopping the automobile before reaching her, when, in the exercise of ordinary care and caution under such conditions he ought to have done so, and might have done so, even if she erred in judgment in the dangerous position forced on her by Carey's negligence. If he saw Mrs. Garside in a dangerous situation, where she was liable to be injured by his going on past her, and he, in the exercise of ordinary care, could have stopped and avoided the accident, it was his duty to do so, and if he failed in that duty, then you may find he was negligent, and if you so find the facts to be, it would be your duty so to find. If negligent—and Mrs. Garside was not negligent under those conditions—and that negligence of the defendant, or of the defendant's driver, caused the injury, the plaintiff is entitled to recover."

The general rule is stated in Saunders on Negligence (page 63) thus:

"Contributory negligence, however, will not disentitle the plaintiff to recover damages, unless it be such that but for such negligence the injury would not have been sustained; nor if the defendant might by the exercise of care on his part have avoided the consequences of the negligence of the plaintiff."

He cites Tuff v. Warman, 2 Conn. B. (N. S.) 27, L. J. C. P. 322 (Ex. Ch.). In 7 Am. & Eng. Ency. Law, pp. 385-387, the rule is thus stated:

"And so when the negligence of the person inflicting the injury is subsequent to, and independent of, the carelessness of the person injured, and ordinary care on the part of the person inflicting the injury would have discovered the carelessness of the person injured in time to avoid its effects and prevent injuring him, there is no contributory negligence, because the fault of the injured party becomes remote in the chain of causation. In such a case the want of ordinary care on the part of the injured person is held not a juridical cause of his injury, but only a condition of its occurrence. * * * And upon the principle that one will be charged with notice of that which by ordinary care he might have known, it is held that, if either party to an action involving the questions of negligence and contributory negligence should, by the exercise of ordinary care, have discovered the negligence of the other after its occurrence in time to foresee and avoid its consequences, then such party is held to have notice; and his negligence in not discovering the negligence of the other, under such circumstances, is held the sole proximate cause of a following injury. But if, in the exercise of ordinary care, the one party would not have discovered the negligence of the other in time to avoid the injury, the rule just stated has no application; and it is only when the negligence of one party is subsequent to that of the other that the rule can be invoked." See the cases there cited.

In the case now under consideration Mrs. Garside, on defendant's theory, was facing northeast, as if to cross to the east side of Sixth avenue. Her back was to the south, and as one of defendant's witnesses puts it she had not been off the car a quarter of a minute. The gasoline automobile was coming south, following the car from which she alighted, and suddenly confronted her, and "tooted" its horn. All this the driver of defendant's vehicle saw, or ought to have seen, the jury were authorized to find. She must avoid it by stepping back, or stopping, if far enough away from the track on which it was proceeding. The jury was justified in finding that, seeing her in that position and place, it was negligence for the driver of defendant's vehicle to go up to and attempt to pass her at that time, thus inclosing her between the two automobiles. And if he did, and she was in peril from the one, and in escaping it was to be in peril of the other, and that other saw the situation, and proceeded on when he might in the exercise of ordinary care have stopped, it was negligence not to do so, or at least the jury were justified in finding, under all the circumstances, that it was negligence. The question was submitted to the jury. If so, and Mrs. Garside by such negligence of defendant was put in that perilous position, and required to act quickly, an error of judgment in stepping too far back would not be such negligence as would defeat recovery.

In Grand Trunk Railway Co. v. Ives, 144 U. S. 429, 430, 12 Sup. Ct. 679, 687, 36 L. Ed. 485, the Supreme Court of the United States stated the rule thus:

"Without going into a discussion of these definitions, or even attempting to collate them, it will be sufficient for present purposes to say that the generally accepted and most reasonable rule of law applicable to actions in which the defense is contributory negligence may be thus stated: Although the defendant's negligence may have been the primary cause of the injury complained of, yet an action for such injury cannot be maintained if the proximate and immediate cause of the injury can be traced to the want of ordinary care and caution in the person injured, subject to this qualification, which has grown up in recent years [having been first enunciated in Davies v. Mann, 10 M. & W. 546], that the contributory negligence of the party injured will not defeat the action if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence. Inland & Seaboard Coasting Co. v. Tolson, 139 U. S. 551, 558, 11 Sup. Ct. 653, 35 L. Ed. 270, and cases cited; Donohue v. St. Louis, etc., Railroad, 91 Mo. 357, 2 S. W. 424, 3 S. W. 848; Vicksburg, etc., Railroad v. Patton, 31 Miss. 156, 66 Am. Dec. 552; Deans v. Wilmington, etc.. Railroad, 107 N. C. 686, 12 S. E. 77, 22 Am. St. Rep. 902; 2 Thompson on Negligence, 1157; Cooley on Torts [1st Ed.] 675; 4 Am. & Eng. Enc. Law, tit. 'Contributory Negligence,' 30, and authorities cited in note 1."

See, also, the following cases: Costello v. Third Av. R. Co., 161 N. Y. 317–322, 55 N. E. 897. It was for the jury to say whether the defendant's driver might not have avoided the consequences of Mrs. Garside's negligence in approaching the track, if she did, by the exercise of reasonable care and prudence. Grand Trunk R. Co. v. Ives, 144 U. S. 409–429, 12 Sup. Ct. 679, 36 L. Ed. 485; Haley v. Earle, 30 N. Y. 208; Button v. H. R. R. Co., 18 N. Y. 248.

To the charge as made, and above quoted, defendant's counsel excepted as follows:

"Mr. McIntyre: 'Even though she made a mistake' were the words I desire to take exception to; that portion of the charge 'that if there was a mistake made, then there was no evidence of contributory negligence."

The court then recharged on the subject as follows:

"The Court: No, I did not say that. I said it was not necessarily contributory negligence. If she was there in that situation, going along as she had the right to do, and that car came down on that westerly track at the speed some of the defendant's witnesses say it did come, and came suddenly upon her, and there was an emergency, and she did the very best she could under the circumstances, if she acted with due care and caution under those conditions and circumstances, then it was not necessarily contributory negligence for her to step back and avoid it. And if she was in that situation, and the driver of the defendant's car saw her there, and saw that rapidly moving automobile coming down—and one witness said, I think, that it went 'whizzing' by—if that was true, if you so find it to be, then, of course, it was his duty, she facing in that direction, as she had the right to face, if she was going northeasterly, if to avoid that automobile she stepped back, and the driver of defendant's car saw her in that position, and saw that car coming, and saw that she would necessarily be between the two, and his nearness to the railroad track was such that she would probably necessarily be hit by one or the other, then it was his duty to stop; and even if she made a mistake in stepping back, if it was necessary to step back at all—if she made a mistake and stepped too far—and the defendant's driver was guilty of negligence in not stopping the automobile when he could see the situation, or when he ought to have seen it, if you so find—if she made a mistake, if such conditions existed, and it is for you to say what the conditions were—under the evidence of the defendant's witnesses her action was not necessarily negligence. You have heard them testify, some of them, that this car from which she alighted, at the time this accident occurred, stood there dead still, and then some of the other witnesses have testified that it had gone on, and

that this car on the same track came down whizzing past. Is that true? Had it gone far enough so that that car came down and whizzed past with those easterly tracks blocked? You will think about it and consider it, and determine just what the facts are. It is for you to say, under all those circumstances."

To this no exception was taken. In the same connection and on the same subject the court also charged:

"Mr. McIntyre: May I ask your honor to charge that if the operator of the defendant's automobile, Carey, stopped his car as soon as he could after having seen Mrs. Garside step backwardly, there was no negligence on the part of the defendant."

"The Court: It is for you to say whether he did see her step backwardly or not, or whether the automobile caught on to her and pulled her back. If she stepped backwardly, then if he stopped his automobile as soon as he could, and if he was not, under the circumstances and conditions, proceeding at a negligent rate of speed, and was not negligent in not looking about him and not seeing her soon enough—if all that is true, then, of course, he did his duty, and defendant is not liable, and the question is what were the circumstances and conditions under which he proceeded."

"Mr. McIntyre: I think your honor did charge that if the jury found that was an unavoidable accident the defendant must have a verdict. I think your honor charged that."

"The Court: Yes. Is there anything further?"

The jury was repeatedly told that the driver of defendant's automobile must have seen Mrs. Garside, and must have had time to stop, and negligently failed to do so.

It seems to me clear that the question of Mrs. Garside's contributory negligence was fairly submitted to the jury, for it was charged expressly:

"If the injury was due to an unavoidable accident, which could not be avoided by the defendant, the defendant is entitled to your verdict. If the plaintiff backed into the automobile without looking to ascertain if it was approaching, she was guilty of contributory negligence, and your verdict must be for the defendant. If the jury find that she became alarmed at the approach of an automobile from the north, and then backed into the defendant's auto, she cannot recover. If that is actually and baldly true, she cannot recover. If she simply became alarmed and backed into it; if you find that she became alarmed at the approach of an automobile, and backed into the defendant's automobile, she cannot recover. I have described the conditions under which, even if it was approaching her, she could recover. If she was guilty of contributory negligence in the slightest degree, she cannot recover. I charge you that. When the operator of the defendant's automobile discovered that the street was blocked or impassable, he violated no law or city ordinance by going from the east side to the west side, but he had a right to cross provided he operated the cab in a careful and prudent manner. I so charge, if under all the circumstances and conditions there existing he went with due care and caution and prudence where he did. If there was a necessity for it, while it would not be in accordance with the terms of the ordinance, still he would have a right to do it."

The jury was also told that "the plaintiff was not, as matter of law, bound to look both ways before crossing the avenue," that is before crossing from the car from which she alighted to the sidewalk. The court added to this instruction the following:

"I have so charged, and I charge it again. It is a question of fact for you to consider and determine whether in the exercise of due care she ought to have done it."

And before that:

"She was bound to be cautious and watchful in seeing, as I have stated; and the greater the danger or the complications about her that she could see or understand, or ought to have apprehended, then, of course, the more careful and watchful she was required to be."

Also:

"Mrs. Garside was also under the duty to look about her, and note the conditions plainly to be seen and those reasonably to be apprehended, and proceed with the expedition and care and caution demanded by such conditions."

Defendant's counsel excepted to the charge in regard to looking both ways as follows:

"I desire to except to that portion of your Honor's charge wherein you say that the plaintiff was not bound to look both ways when she was alighting from the car."

The court then said and charged:

"I did not say that. I did say, and I say again, that she was not bound, as a matter of law, to look both ways. The law did not impose any such absolute duty on her. It is a question for you, in the exercise of reasonable care and caution, what ought a person to do on and after alighting from a car; and I have stated to you that it is their duty to exercise their senses, to look and listen. Just where they shall look and how they shall look depends on the surrounding circumstances, and it is for you to say what she ought to have done there in the exercise of due care, and what she did do. She says she did look both ways. It is for you to say whether she did or not."

To this no exception was taken. The charge on this subject was correct. Moebus v. Herrman, 108 N. Y. 349, 15 N. E. 415, 2 Am. St. Rep. 440; Elliott, Roads & Streets (2d Ed.) 912, § 835; Williams v. Grealey, 112 Mass. 79; Shapleigh v. Wyman, 134 Mass. 118; Stringer v. Frost, 116 Ind. 477, 19 N. E. 331, 2 L. R. A. 614, 9 Am. St. Rep. 875; Hennessey v. Taylor, 189 Mass. 583, 76 N. E. 224.

In Moebus v. Herrman, supra, the court said:

"The duty imposed upon a wayfarer at the crossing of a street by the track of a railroad to look both ways does not, as matter of law, attach to such person when about to cross from one side to the other of a city street. The degree of caution he must exercise will be affected by the situation and surrounding circumstances. In the former case there is obvious and constantly impending danger, not easily or likely to be under the control of the engineer; in the latter the vehicles are managed without difficulty, and injuries are infrequent."

It is quite true that there may be cases where it should be and would be held as matter of law that to enter upon and attempt to cross a crowded city street where vehicles were numerous without looking both ways was negligence. Such was the case of Barker v. Savage & Gormley, 45 N. Y. 191, 6 Am. Rep. 66. But here no such or similar conditions existed, no vehicles were near, the avenue was not crowded, and there was a city ordinance, of which Mrs. Garside presumably had knowledge, reading as follows:

"It shall not be lawful for any vehicle to be driven or propelled around a corner of any of the streets or avenues of said city traveling at a faster gait than at the rate of three (3) miles an hour, and all and every such carts and all other vehicles when passing through or along any of the streets or

avenues of said city shall, when in motion, be kept on the right of the center of the road at all times, except within 100 feet of the stopping or starting point. And it shall be unlawful for any such public cart, carriage or any other vehicles, or horse or horses attached thereto to be driven foul of or against any person, vehicle or other thing whatever, in any of the streets or avenues of said city."

And Mrs. Garside had no knowledge of any blockade of the avenue on the east side, and hence no reason to think any vehicle would come north on the west side of the avenue. For these and other reasons, the court could not have properly charged that Mrs. Garside was bound, as matter of law, to look both ways, up and down the avenue, before attempting to cross that narrow space to the west curb. The court was not requested to so charge, or to charge even that it was negligence not to look both ways. The court charged the jury, however, on this point:

"If the jury believe that the plaintiff on alighting from the car looked to the south, and did not see the vehicle of the defendant approaching, and that such vehicle was then more than a car's length from the plaintiff, and hidden by the one from which she alighted, and that the plaintiff then proceeded to cross the avenue with due diligence, and was struck on the back by defendant's vehicle the jury may find that the plaintiff was free from negligence, and that the injuries were caused by the negligence of the defendant. If you so find the facts to be true, that is true, gentlemen."

This was tantamount to saying that plaintiff could not recover unless such were the facts; that is, unless she looked south, and failed to see defendant's vehicle, because it was hidden from her view by the car from which she alighted.

The peculiar stories told by the driver of defendant's vehicle and the footman with him and that of the witness Steurer, when taken with the other testimony in the case, may not have impressed the jury as frank and truthful. Collier, Fitzgerald and Stephens all, in a general way, corroborated Mrs. Garside. Considerable stress is laid on the fact that some of plaintiff's witnesses spoke of Mrs. Garside having apparently turned so as to face northeastwardly, and as having taken a sort of half side, half backward, step just before coming in contact with the vehicle. Quite likely the movements described by Mrs. Garside appeared just that way to them. Any intelligent person who has seen a lady turn her head, and drop and turn her shoulder, with a backward movement of the right limb and foot at the same moment as she picks up the trail of her dress, will see in a moment how Mrs. Garside seemed to turn partly to the east as she took up the trail of her dress the moment before she started to cross to the westerly walk. The evidence of Collier and Fitzgerald is perfectly consistent with that of Mrs. Garside in all essentials.

The damages awarded were reasonable in amount, and justified by the evidence. That she was injured and suffered a long time was probable, and supported by medical evidence of undoubted credibility. The extent of the injury was disputed, as was its probable duration. The verdict gives no evidence of prejudice or passion. The jury was specially cautioned in this regard. The damages awarded Mr. Garside were not excessive. The physician's bill was reasonable, as were

the bills for crutches and medicines. He lost her services in his household in the administration of its affairs and in the care of his children for months, and there was proof of the value of certain of such services which would have justified a larger verdict. It was immaterial to his right of recovery that Mrs. Garside's mother came in, and so far as she could supplied her place without charge. To enable Mr. Garside to recover for the loss of such services of the wife it was not necessary to show that he supplied her place at all, or, if he did, that he paid out anything, or became legally obligated to pay, for the services of the one who became the housekeeper. If he had paid anything, it might have been recovered as an item of damage, but not as the measure. See generally, 1 Joyce on Damages, § 316; Jones v. U. & B. R. R. Co., 40 Hun (N. Y.) 349; Ainley v. M. R. Co., 47 Hun (N. Y.) 206; Kelley v. Mayberry Tp., 154 Pa. 440, 26 Atl. 595.

I think the verdicts were amply sustained by the evidence, and, finding no error that could have prejudiced the defendant, the motion for a new trial is denied.