H. N. PHARR, Administrator of JACK EZZELLE, v. THE
SOUTHERN RAILWAY COMPANY.

*Action for Damages—Railroad Company—Duty of Engi-
neer—Injury to Person on Track—Negligence—Lia-
bility Notwithstanding Contributory Negligence.*

1. It is the duty of an engineer while running an engine to keep
   a careful lookout along the track in order to avoid or avert
   danger in case he shall observe any obstruction in his
   front.

2. Where a man, apparently intoxicated or asleep, or both, was
   lying so near the outer side of a rail as to expose himself to
   danger from a passing engine, and the engineer, by ordinary
   care, could have seen him in time to stop the train by the
   use of the appliances at his command and without peril to
   passengers on the train, before the engine struck him, the
   company is liable for the resulting injury, notwithstanding
   the man's contributory negligence.

CIVIL ACTION, tried before *Brown, J.*, at October Term,
1896, of the Superior Court of MECKLENBURG County. The
action was brought by the plaintiff, administrator of Jack
Ezzelle, deceased, to recover damages for the negligent
killing of the plaintiff's intestate by the agents of the
defendant company, on the ........ day of September, 1895.

The evidence, offered by the plaintiff to sustain his
claim for damages, is as follows:

W. E. Younts, witness for the plaintiff, testified as fol-
lows:

"I saw the place pointed out to me by James Crawford
where Jack Ezzelle was killed. The track was level on
side. I measured the distance from where deceased was
killed to the first curve in the track, and it was 600 steps.
I tried in stepping it to step a yard, and I think I did. The
day deceased was killed was a clear day, to the best of my

recollection. The train that killed him was going in the direction of Columbia, that is, south. The place where deceased was killed was 600 steps south of the curve. I don't think there was anything on the track to prevent deceased from being seen by the engineer. The road-bed had recently been leveled up with gravel. Deceased was 45 or 50 years old and was a colored man—would get drunk. Crawford pointed out to me the place where his body was found. His head was lying between the cross-ties just outside of the rails, and his body extended across the ditch. I saw deceased just after he was killed and saw blood on his head. He got drunk very often and had whiskey in his valise the day he was killed, also railroad ticket in his pocket from Charlotte to Fort Mill, S. C. Ticket was found at coroner's examination.

J. R. Hunter, the engineer on the train that killed the deceased, testified as follows:

" Was engineer of No. 63. Between 11 and 12 o'clock of the day as I got out of the curve, my train going south, I saw something lying on side of track in ditch. Could not tell what it was. Had no idea it was a man. When I got between 50 and 75 yards of it the object raised its head. I then discovered for the first time that it was a man. I at once put air brakes on as hard as I could get them and blew for hand brakes, which were applied at once. It was a freight train and had some air brakes and some hand brakes. The effect was to stop the train at a little more than its length. It was made up of 30 box cars, some empty and some loaded. Each box car was 32 feet long. The last car was 10 or 15 car lengths from body after it passed and the train stopped. I did all I could to stop after I saw the object was a man. I did not reverse the engine because I could not have stopped the train as quickly if I had. I applied the air brakes to the

driving wheel.    The engineer's schools teach that it is best not to reverse the engine when air brakes are on drivers. The wheels will slide.    The brakes will stop the train quicker if the engine is not reversed.    After stopping the train, went back and found the body of colored man lying in ditch.    His head was lying on the cross-ties outside of the rails.    A bolt under the pilot of the engine had struck his head and inflicted a wound that caused his death.    He was still breathing when we first found him, but died in a few minutes.    I carried the body to Pineville.    If he had not raised his head he would not have been struck by the engine.    There was a valise containing a jug of whiskey setting beside the body when we found him.    The track was straight and down grade towards Pineville from the curve.    We were running 25 miles an hour.    When I saw the object first I thought it was a cross-tie lying out from the track.    I looked carefully.    Cross-ties are frequently left that way.    I did not see the man's head.    It is nothing uncommon to see such objects along the track.    I put on emergency brakes as soon as I had reason to see it was a man.    I had already applied some brakes in getting ready to stop at Pineville.    Had all the brakes partly on when I saw it was a man, but put them on with full force and blew for hand brakes as soon as I discovered the object to be a man.    Had two regular brakesmen and conductor on train.    The freight conductors also brake, and he was on top of the train when it stopped. Air brakes are better than hand brakes.    Had some air brakes on 10 cars and hand brakes on 20.    After applying all brakes the train stopped in 1,500 or 1,600 feet.    No obstructions on track.    No part of body on track.    I did not suppose the object was a man until he raised his head. Then I put on all the power I had to stop the train."

119—48

D. M. Broome, the fireman, the next witness of the defendant, testified :

" I first saw object after we turned curve. Did not think it was a man. The object extended out from the track. We were going down a heavy grade towards Pineville. First discovered it was a man when 50 or 75 yards from it, when the object raised head. I said it was a man. The engineer said ' Yes,' and at once put on and blew for brakes and rang bell. The train passed the object some few car lengths before it stopped. Deceased's head was between the cross-ties when we found the body. When we first discovered the object I could not see the head. We sanded the track and put on all brakes, as the engineer described. I thought the object was a cross-tie." This witness in the remainder of his testimony corroborated the engineer in substance, as did also the conductor.

Among the special instructions requested by plaintiff was the following :

" If the jury find from all the evidence that the engineer by keeping a proper lookout from his engine could have discovered that the object which he testifies he thought was a cross-tie was a human being, lying apparently helpless so near the rail of the track as to expose him to danger from the passing of the engine, and when he first discovered, or by the exercise of ordinary care and diligence could have discovered, that it was a human being in that position, he could, by the use of the appliances at his command, and without peril to those on his train, have stopped the train in time to have avoided the injury to plaintiff's intestate, the defendant was guilty of negligence, notwithstanding the plaintiff's intestate was careless in lying down near the track, and the jury will answer the first issue ' Yes ' and the third issue ' Yes'."

The court declined to give instructions prayed for by the

plaintiff, and the plaintiff duly excepted.   The court then intimated that, in lieu of the instructions prayed for, it would instruct the jury as follows:

"That the burden of proof is on the plaintiff on all the issues except the second; that as to whether the jury believes the witnesses is purely a matter for the jury; that if the jury believe the testimony of the witnesses in this case to be true and find the facts to be as testified by them the plaintiff is not entitled to recover in this case, and that the jury should find the issues for the defendant and award no damages.   Upon such intimation the plaintiff duly excepted and submitted to a non-suit and appealed.

*Messrs.  Burwell,  Walker & Cansler*, for plaintiff (appellant).

*Mr. Geo. F. Bason*, for defendant.

MONTGOMERY, J.: The plaintiff was lying in a position horizontal to the railroad track, with a part of his body resting in a slight depression caused by a small ditch. His head, on or between the sills, could not be seen by engineer and firemen, according to their testimony, and was so near the rail as to be struck by the engine as it passed.   From the evidence he was asleep or drunk, probably both.   The engineer testified that, as he turned a curve in the road at a point six hundred yards distant from the place where the man was killed, he saw the object; that he looked at it carefully and thought it was a cross-tie.   It attracted his attention.   His duty then was more than ever to have kept a reasonable and proper lookout in his front in order to discover the nature of the object in time to stop the train and prevent injury if it should turn out to be a man or animal.   And yet, as we understand the testimony of both the engineer and the fireman, after a careful reading of it, there was no further lookout until

the engine was within fifty or seventy-five yards from where the man was killed—too late to stop the train and prevent the injury.

The counsel of the defendant, in his argument here, undertook to distinguish the facts in this case from those in the case of *Pickett* v. *Railroad,* 117 N. C., 616, and insisted that the law which was announced there upon the facts did not apply to the facts in this case. It is true that in Pickett's case, *supra,* the man was lying on the track, partly between the rails, asleep, while in this case no part of the body was between the rails. But we think that the rule which requires an engineer to keep a reasonable lookout in his front in observing the track applies as fully to the facts in this case as to those in Pickett's case. A railroad company would certainly be liable to passengers if its engineer by a reasonable and proper lookout could have seen an object, though not immediately on the track but on the side and so near as to obstruct an engine and cause injury to them, and did not stop his engine in time to prevent it. And it does seem that the same rule would apply, and the company be liable to the next of kin at suit of personal representative, where a man might have been seen lying apparently helpless and so near to the track as to be killed by a passing engine. We think that this Court has so decided in effect, if not directly, in *Deans* v. *Railroad,* 107 N. C., 686. There the Court said, "It is the duty of an engineer while running an engine to keep a careful lookout along the track in order to avoid or avert danger in case he shall observe any obstruction in his front." The position of the man as to the railroad track in that case was on the side of the track. A witness testified that "he could not tell from his position whether he was lying across the rail, but thought his head was on the road-bed beyond the ends of the cross-ties."

PHARR *v.* RAILROAD COMPANY.

We are therefore of the opinion that his Honor was in error when he instructed the jury that if they believed the testimony of the witnesses, and found the facts to be as testified by them, the plaintiff could not recover, and that they should find the issues for the defendant.   He should, upon the issues submitted, have instructed the jury that the plaintiff had contributed to his own injury.   The testimony on that point was uncontradicted ; in fact, the contributory negligence was admitted.   He should then have instructed the jury as to the third issue, which was in these words :   " Notwithstanding the negligence of said intestate, did the defendant's agents exercise ordinary and reasonable care to prevent the injury ? " that if from the evidence (it clearly appearing that two inferences might be drawn therefrom by fair-minded men) they should find that the engineer by keeping a reasonable and careful lookout could have discovered the object, which he said he thought was a cross-tie, was a man lying apparently helpless so near the rail of the track as to expose him to danger from the passing engine, or when he first discovered, or by the exercise of ordinary care and diligence could have discovered, that it was a man, he could by the use of the appliances at his command, and without peril to those on his train, have stopped the train in time to have avoided the injury to the plaintiff's intestate, the defendant was guilty of negligence, notwithstanding the plaintiff's intestate was careless in lying down near the track, and the jury will answer the first issue ' Yes ' and the third issue ' Yes.'

As the plaintiff is entitled to a new trial we will not discuss any further the special instructions asked by the counsel of the plaintiff, as they may not arise on the new trial.                                    New Trial.