## MᶜARVER v. SOUTHERN RAILWAY CO.

(Filed December 20, 1901.)

1. EVIDENCE—*Sufficiency—Negligence.*

    The evidence in this case as to the negligent killing of the intestate by the defendant company is held sufficient to be submitted to the jury.

2. NEGLIGENCE—*Presumptions.*

    Where an engineer sees a person on the track apparently able to get out of the way of the train, he is not required to check his speed or stop his train.

3. NEGLIGENCE—*Proximate Cause.*

    It is error to charge that a failure on part of an engineer to see a person on the track, if he could have done so by keeping a proper lookout, is such negligence on part of railroad as to make it the proximate cause of the injury.

ACTION by J. E. McArver, administrator, against the Southern Railway Company, heard by Judge *H. R. Starbuck* and a jury, at May (Special) Term, 1900, of the Superior Court of GASTON County. From a judgment for the plaintiff, the defendant appealed.

*A. G. Mangum,* for the plaintiff.
*Geo. F. Bason,* and *A. B. Andrews, Jr.,* for the defendant.

MONTGOMERY, J. The plaintiff's intestate was killed about 11 o'clock at night, within the corporate limits of the town of Gastonia, by a westward bound train of the defendant from Charlotte, moving at the rate of about twenty-five miles an hour. The dead body was found, the head toward the west, in a little path alongside the track, and about two feet from ten end of the cross-ties. Below the left ear there were signs of injury, and the left shoulder, down to the elbow, was badly

broken and mashed.   There was evidence to the effect that
the engineer could have seen the intestate if he had been
keeping a lookout along the track in time to have stopped the
train before it reached the place where he was; and also that
the intestate was drunk an hour before he was killed.   The
engineer testified that he saw someone sitting on the ground
on the left-hand side of the track, with his back against the
end of the cross-ties, and his head and shoulders bent forward;
and that if he had straightened up he would have been struck
by the train.   He further testified that the cross-ties ex-
tended about two feet outside of the rails, and that the car
steps extended eighteen or twenty inches over and beyond
the rails.   He also said: "When I got to Gastonia, I got off
my engine and told the agent to send someone back over there;
that I had seen someone over there close to the railroad, that
perhaps he might have been struck, and I told him to let
me know at Blacksburg.   I was so well satisfied in my mind
that it is a wonder I did that."   Certainly that evidence, even
without that touching the position of the body after death
and the nature of the wounds, was sufficient to be submitted
to the jury on the first issue; and there was no error in the
refusal of the Court to nonsuit the plaintiff for want of evi-
dence on the question of defendant's negligence.   The state-
ment of the engineer that the intestate was in a safe position
and would not have been hurt if he had remained where he
was when he saw him, is merely an opinion, and the fact that
he manifested uneasiness about the condition of the intestate,
as shown by his requesting the agent at Gastonia to send
back to the place and investigate conditions, makes it evident
that he himself was doubtful about the correctness of his con-
clusions.   The prayers for instruction of the defendant, ex-
cept the fifth, concerning questions of the liability of the de-
fendant as dependent upon the evidence concerning the posi-
tion and condition of the plaintiff at the time of the injury,

and they are covered by a proper modification of the ninth prayer, as follows: "If the engineer saw intestate sitting in an erect position, or in any other position, which did not make it appear that he was helpless, he had a right to assume up to the last moment that he would get out of danger, and was under no obligation to check his speed or stop his train, and if the jury find from the evidence that intestate's position was not such as to make it appear to him that he was helpless in time to have stopped the train, the answers to the first and third issues should be 'No.' "

The fifth prayer was in these words: "If the jury believe the evidence that plaintiff's intestate was not attempting to use the road-crossing, but was at a point between the road-crossing, the defendant owed him no duty to give signals of its approach, either by whistle or bell, and if the failure to ring a bell or blow a whistle was the cause of intestate's death, the answer to the first issue should be 'No.' "

In response, his Honor told the jury in substance that the failure to ring the bell or blow the whistle could not be considered as negligence concerning the intestate's death; that such failure could only be considered as evidence upon the question of whether a proper lookout was kept by the engineer. We see no cause of complaint on the part of the defendant to that instruction. But there was an error in a part of the general charge of his Honor, which entitles the defendant to a new trial.

We might have sent this case back without a discussion of the other exceptions, but we have thought it not best to do so, as it is almost certain that the same questions will be raised again on a new trial. His Honor, in the course of his charge, instructed the jury in these words, "Did the servants of the railroad company in charge of the engine fail to keep the lookout in front of the engine and on the track? If they failed to keep a lookout upon this occasion, your answer to the

first issue will be 'Yes.' "　The first issue was, "Was defendant negligent as alleged ?"　The allegation of negligence was: "That defendant, by its employees and agents, carelessly and negligently ran a train of cars with locomotive attached against the plaintiff's intestate, while the said intestate was in the helpless and insensible condition aforesaid, when the said employees and agents of defendant saw, or by the exercise of reasonable care could have seen, from the position and posture of plaintiff's intestate, that he was in an unconscious, helpless and insensible condition upon said track, or so near thereto that he would be stricken by said train ·of cars and locomotive."

And there was added an additional allegation that the intestate was killed within the corporate limits of Gastonia, the train being run at that time with a reckless and unlawful rate of speed, and at a faster rate than the ordinance of the town allowed, and without keeping the proper lookout, using reasonable care or properly controlling the train, and without blowing the whistle or ringing the bell as the train approached the point where the intestate was.　The error consisted in the statement that a failure on the part of the engineer to keep a lookout was such negligence on the part of the defendant as to be in effect the proximate cause of the injury.　For it was assumed that the intestate was on the track, helpless and unconscious, or so near to the track as to be in peril of being killed by a passing train, and also that the defendant saw, or could by keeping a diligent lookout have seen, him in that situation and condition in time, by the use of available means, to have prevented the injury—the very issue of fact to be tried by the jury upon the evidence.　If the intestate was sitting upright with his back to the cross-ties, or in any other attitude which did not make it apparent to the engineer that he was in a helpless condition and in danger of being stricken by the train, then the engineer could

have assumed up to the last moment that he would have gotten out of danger, and the engineer was not bound to either stop his train or slacken its speed, or give him notice by bell or whistle. A lookout by the engineer for such a person in such a position is not required by the law. Engineers in charge of moving trains are required by the decisions of this Court to exercise reasonable care in observing the track, keeping a diligent lookout for obstructions of any kind, including cattle, horses and hogs, and also persons who may be helpless or unconscious, or both. And this lookout is not only for the safety of the passengers on the train, but also for the protection of cattle, etc., and of those persons who may be in the condition and situation as just described. If, therefore, an engineer, in the omission of the requirement to keep a vigilant outlook fails to see such a person on the track, or so near to it as to be in peril from a passing train, and could have, by the use of his appliances, prevented the injury and failed to do so, then he would be also guilty of negligence. *Deans v. Railroad Co.,* 107 N. C., 686; *Carlton v. Railroad Co.,* 104 N. C., 365; *Pharr v. Railroad Co.,* 119 N. C., 751; *Norwood v. Railroad Co.,* 111 N. C., 236; *Baker v. Railroad Co.,* 119 N. C., 1015; *Upton v. Railroad Co.,* 128 N. C., 173.

So the defendant's negligence in this case did not depend entirely upon whether the engineer failed to keep a lookout in front of the engine and along the track.

Before the first issue could be found against the defendant, it was necessary for the jury not only to have found the fact that the engineer had failed to keep a proper lookout, but also that the intestate was on the track in a helpless condition, or so near to it in that condition as to be in peril of being stricken by a passing train, and also that the engineer saw, or could by keeping a diligent lookout have seen, him in that situation and condition in time to have prevented the

injury, and failed to do so. The defendant, in its brief, insists that that instruction could not have misled the jury; that it was a mere continuation of the charge, and when taken in connection with that part of the charge which preceded it and that part which followed it, it could have done no harm. But the whole of that part of the charge concerning the first issue is in line with that part which is specially objected to, and which we have been discussing. It is in the following words:

"The general definition of negligence is the failure to do what a man of ordinary intelligence and prudence would do under the circumstances. In this case, in considering whether or not the engineer was negligent, you will consider whether or not he failed to do what an ordinarily prudent and skillful engineer would have done under the circumstances. To make my instruction still more specific, in order to find that the defendant railroad company was negligent, you must find either that the engineer was negligent in not keeping a proper lookout along the track ahead of him, or if he was keeping a proper lookout, that he saw the intestate, McArver, upon the track, and that he was lying or sitting in an apparently helpless condition, and that the engineer would, by reasonable efforts, without imperilling the lives or safety of those on the train, have stopped the train in time to have avoided the injury. It was the duty of the engineer to keep a lookout along the track ahead of him, or at least it was the duty of the company to have some one in the engine to keep a lookout ahead. It was the further duty, if by keeping such a lookout the servants of the defendant in charge of the engine saw, or could by reasonable care have seen, the intestate upon the track in an apparently helpless condition, or so close to the track as to make it likely he would be stricken by the engine as it passed, to use reasonable efforts to stop the train, if they could have stopped it in time to have prevented the

25——129

McARVER *v.* RAILROAD.

injury and without imperilling the safety of those on board. If the servants of the defendant in charge of the engine failed to perform either one of these duties, then the defendant railroad company is negligent, and the answer to the first issue should be 'Yes,' otherwise 'No.' "

New Trial.

DOUGLAS, J., concurring in result only:   For the reasons stated in my dissenting opinion in the case of *Slewart v. Railroad Co.,* 128 N. C., 519, I can not concur in the opinion. I concur in the result only because his Honor appears to have fallen into the error pointed out in *Edwards v. Railroad,* at this term, of assuming that if the defendant was negligent, such negligence was the proximate cause of the injury. The jury might have inferred this fact from the evidence, but the Court could not do so as matter of law.

CLARK, J., concurs in the concurring opinion.