## Chesapeake & Ohio Railway Company v. Mason, et al.

(Decided April 27, 1916.)

### Appeal from Franklin Circuit Court.

1. **Railroads—Obstructions on Right-of-Way That Interfere With Lookout.**—It is the duty of a railroad company to keep its right-of-way free from unnecessary obstructions that interfere with the view of the men in charge of the engine, whether these obstructions were placed in the right-of-way by the railroad company or by other persons. No matter who puts this kind of an obstruction on the right-of-way, or for what purpose it is put there, or how it comes to be there, the railroad company has the right to have it removed.

2. **Railroads—Obstruction of Right-of-Way—Trees or Limbs.**—If the limbs of trees project over the right-of-way to such an extent as to interfere with and obstruct the view of the trainmen, the railroad company has the right to have the limbs removed, notwithstanding the fact that the trees upon which the limbs grow are owned by and standing within the enclosure of an adjacent property owner.

3. **Railroads—Instructions in Suit for Killing Stock.**—In giving instructions in suits against a railroad company for killing stock,

the instructions should use the words generally used in such instructions, without the addition of new words or the omission of old ones, and the use of the word "vigilant" in respect to lookout duty is not approved.

4. Railroads—Instructions in Suit for Killing Stock—Harmless Error.—An instruction telling the jury that they might find one-half of the value of the cattle killed on account of the failure of the company to fence its right-of-way was not prejudicial in this case as the jury did not find against the company under this instruction.

5. Trial—Verdict of Jury When Evidence Conflicting.—When the evidence is conflicting this court will not interfere with the verdict of a properly instructed jury if there is sufficient evidence to support the finding.

T. L. EDELEN and SHELBY, NORTHCUTT & SHELBY for appellant.

FRANK CHINN and O'REAR & WILLIAMS for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This suit was brought by Mrs. S. B. Mason and her son, S. A. Mason, against the railway company to recover the value of nineteen head of cattle killed and injured by a locomotive and cars of the railway company. There was a judgment in favor of the plaintiffs, and the railway company appeals.

The facts shown by the record are substantially these: Some employes of the plaintiffs were driving a drove of fifty-two cattle along the public road on the north side of the railroad. This public road crosses the railroad at grade and intersects at the property line of the railroad south of the track a public road running east and west close to and parallel with the railroad. When the cattle crossed the track the drivers wanted to take them on the road south of the track east a distance of several hundred yards so that they might be turned in at a gate opening from the farm of plaintiffs onto this public road. There was no fence between this county road and the railroad, and when the cattle got on the railroad track, in place of going across the track and up the county road, they ran east on the track and right-of-way of the railroad, and when they had gotten a few hundred feet from the crossing a fast passenger train of the defendant, running at a speed of from forty-five to fifty miles an hour, came in sight, and despite the efforts of the attendants to get the cattle off the track, nineteen

of them were killed and injured by the locomotive and cars of the train.

It appears that the railroad track curves toward the north at the point where the cattle were struck, and as the train was going west the engineer's seat in the cab was on the inside of the curve. He testifies that when he was giving the signal, at the usual place, for the crossing at which the cattle crossed the track, and while going around this curve, he first discovered the cattle on the track and right-of-way. That he could have discovered them sooner except for some trees on his side of the track which obstructed his view. He said that he was keeping a sharp lookout and that when he discovered the cattle he endeavored to stop the train, using for that purpose all the appliances at his command, but did not succeed in stopping it until after it had gone about a train length beyond the place where the cattle were struck. That just before he saw the cattle on the track he had commenced giving the crossing signals, but as soon as he saw the cattle, he stopped blowing the signals and commenced applying the emergency brake and using other efforts to stop the train. That the train with its five coaches, at the speed it was running, could not have been stopped in less than about 1,750 feet, and that he could not have stopped it in 700 feet.

The fireman said that the train was running at about forty-five miles an hour and had slowed down to a speed of about thirty-five miles an hour when it struck the cattle, and was then stopped in a train length.

It further appears that there were no obstructions on the right-of-way of the railroad between the whistling post and the crossing which would interfere with the view of the engineer except the limbs of some trees that projected several feet over the right-of-way.

The whistling post is 1,352 feet from the road crossing, and it appears that the cattle were struck at a point opposite a pond, which is 345 feet from the road crossing and a little over a thousand feet from the whistling post.

Two or three witnesses also testified that if the engineer had been keeping a lookout he could have seen the cattle on the track just before and when he reached the whistling post. There was other evidence to the effect that the train could have been stopped within a distance of about its own length, or three hundred and fifty feet.

With the evidence as stated, the court instructed the jury "that it was the duty of the defendant railroad company to use ordinary care in keeping its right-of-way free from such unnecessary obstructions as would prevent those operating its locomotives from seeing such objects as cattle upon its railroad track which could otherwise have been seen; it was also the duty of those in charge of defendant's locomotive upon the occasion in question to keep a vigilant lookout all along the railroad track and right-of-way to discover the presence of cattle which might be, or have strayed, upon the said track, and to use ordinary care to avoid killing or injuring such cattle; it was also the duty of defendant's servants in charge of its said locomotive in approaching a public highway crossing to sound the steam whistle and bell upon the said engine either continually or alternately from a point at least fifty yards from said crossing until the said engine reached the crossing; it was also the duty of those in charge of defendant's locomotive, after they saw or by the exercise of reasonable care could have seen and known of the presence of plaintiffs' cattle upon the railroad track upon the occasion in suit (if they did see or by the exercise of ordinary care could have seen same), to have used all the means at their command consistent with the safety of the said train, its operatives and passengers, to have avoided injuring said cattle. Now if the defendant negligently failed in any of the particulars set forth in this instruction, and as a direct and proximate result thereof the plaintiffs' cattle were killed, or injured so that they had to be killed, then the law is for the plaintiffs and the jury must so find."

One objection urged to this instruction is that it put the duty on the company of using ordinary care in keeping its right-of-way free from unnecessary obstructions that would prevent the persons in charge of the engine from seeing the cattle on the track, which otherwise they could have seen. This paragraph in the instruction was doubtless based on the evidence of the engineer and other witnesses showing that the limbs of trees that were growing just inside the fence of the adjacent property owner projected such a distance over the right-of-way of the company as to obstruct the view of the engineer in going around the curve. Undoubtedly it is the duty of a railroad company to keep its right-of-way free

from unnecessary obstructions that interfere with the view of the men in charge of the engine, whether these obstructions are placed in the right-of-way by the railroad company or by other persons. No matter who puts this kind of an obstruction on the right-of-way, or for what purpose it is put there, or how it comes to be there, the railroad company, for the protection of passengers and property, has the right to have it removed. And so if the limbs of trees project over the right-of-way to such an extent as to interfere with and obstruct the view of the trainmen, the railroad company has the right to take such steps as may be necessary to have these limbs removed, notwithstanding the fact that the trees upon which the limbs grow are owned by and standing within the enclosure of an adjacent property owner. Obstructions like these are regarded as a nuisance and may be abated. Hickey v. Michigan Central R. R. Co., 96 Mich. 498, 27 L. R. A. 729.

The fact that these trees happened to be standing on the land of the plaintiffs of course does not affect the question or estop the plaintiffs from setting up the obstruction permitted by the company as a ground of negligence. The company doubtless did know, or, at any rate, could easily have known, that the limbs of these trees projecting over its right-of-way obstructed the view of its trainmen and should have taken such steps as were necessary to have them removed.

The word "vigilant" in defining lookout duty is also criticised. We think it better practice in giving what might be called standard instructions to use the words generally used in such instructions without the addition of new words or the omission of old ones; and so we do not approve of the use of the word "vigilant." But plainly its use was not prejudicial error in this case, because the engineer testified that he was keeping a "sharp lookout," and, aside from this, it is doubtful if there is any very substantial difference between keeping such a lookout as it was the duty of the company to keep and keeping a vigilant lookout.

Complaint is further made of that part of the instruction putting on the company the duty of sounding its whistle and ringing its bell; but this objection is not substantial.

The jury were told in the instruction that they could not find the company guilty of negligence on any of the

points set out in the instruction unless they believed that the cattle were killed as the direct result of the failure on the part of the company to perform the duties pointed out, and the whole of the evidence clearly shows that the jury must have rested its verdict on that part of the instruction setting out that it was the duty of the company, after its employes saw, or by the exercise of reasonable care could have seen, the cattle on the track, to have avoided injury to them, because there is evidence that the engineer could have stopped his train in time to have avoided striking the cattle after he saw, or in the exercise of ordinary care could have discovered, their presence on the track. This evidence is not altogether convincing, and it is contradicted by the evidence of the engineer. But we think there was sufficient to warrant the jury in returning a verdict upon the ground that the company was guilty of negligence in this respect.

The evidence shows that the cattle were killed west of the whistling post, and the engineer testifies that when he first commenced to sound this crossing whistle he discovered the presence of the cattle; and so, according to his own evidence, at the time they were discovered by him the cattle were about a thousand feet away. Other witnesses, testifying from observations made by them, said that the cattle could have been seen at the place where they were killed at a point 130 feet east of the whistling post. Taking this evidence in connection with the evidence of the witnesses who said that the train could have been stopped in a distance of four or five hundred feet, or its own length, the jury were authorized to find that the engineer either did not discover the cattle as soon as he could have, or else did not stop the train as soon as he could have after discovering them.

The fireman testifies that the train was stopped within its length, or within a distance of about 350 feet, after it struck the cattle, and it was only running ten miles slower then than it was when the engineer first applied the brakes. If it was stopped when running at thirty-five miles an hour in 350 feet, it would seem reasonable that when it was running at forty-five miles an hour it could have been stopped in say eight hundred feet, and this would have saved the cattle.

An instruction was given telling the jury that they should find for the plaintiff one-half of the value of the cattle killed if they believed from the evidence that the cattle strayed on the right-of-way on account of the absence of a fence on the south side of the track between it and the county road, and because of the absence of a cattle guard at the east side of the road crossing, if they believed that the absence of the fence and cattle guard was the direct cause of the cattle straying on the track and being killed. This instruction is also complained of; but without stopping to inquire whether it should have been given, manifestly the error in giving it, if any, was harmless, because the jury did not find for the plaintiffs under this instruction.

It is further urged that the finding of the jury was palpably against the weight of the evidence on the issue of contributory negligence. The court instructed the jury that if they believed from the evidence that the employes of plaintiffs who were in charge of the cattle failed to use such care as men of ordinary prudence use in transacting their own business to ascertain the approach of a train and to avoid an accident, and that such failure contributed directly to the accident, they should find for the defendant.

We do not agree with counsel that on this issue the jury should have found for the company. Baker, one of the men in charge of the cattle, testified that he went ahead of the cattle to the railroad crossing to look and listen for the approach of trains, and after standing there about two minutes and not hearing or seeing any train, decided that it would be safe to let the cattle go across the track, and told the other man to drive the cattle on, which he did. It further appears that when the cattle reached the track, in place of going across it and up the county road as was intended and as the men endeavored to make them do, they went up the railroad track and right-of-way, with the men after them, making an effort to drive them off the track and onto the adjacent county road, in which task they were engaged when the train appeared. There is no contradiction of this evidence, and we think the finding of the jury, that these men were not guilty of such contributory negligence as would defeat a recovery, is sustained by the evidence instead of being flagrantly against it.

The case really turns on the question whether the engineer, in the exercise of ordinary care, could have seen the cattle and stopped the train before striking them. Whether he could have done this or not is involved in considerable doubt. There is evidence both for and against the proposition, and if the jury had found for the railroad company, it could not have been said that their finding was palpably against the weight of the evidence; nor can it be said that the finding against the railroad company was palpably against the weight of the evidence.

The judgment is affirmed.