## Chesapeake & Ohio Railway Company v. Turley.

(Decided October 18, 1921.)

### Appeal from Montgomery Circuit Court.

1. Railroads—Injury to Animals on or Near Tracks.—As Ky. Stats., sec. 809, provide that the killing or injury of stock by the engine or cars of a railroad company "shall be prima facie evidence of negligence and carelessness on the part of the company, its agents and servants," the admission of such killing or injury of stock by the answer of the company in an action by the owner to

recover damages therefor, places upon the company the burden of overcoming by proof the presumption that it was caused by the negligence of its servants in charge of the train; and unless the evidence introduced in its behalf affirmatively shows the absence of such negligence, the recovery of damages will be authorized.

2. Railroads—Injury to Animals on or Near Tracks—Crossings.— Where stock is killed or injured by the engine or cars of a railroad company at or on a public crossing, such as is described in sec. 786, Ky. Stats., the failure of those in charge of the train to give in approaching such crossing, the signals required by that section, in the manner therein prescribed, is prima facie evidence of negligence; but whether this negligence of itself, or in connection with other negligence on the part of the company's servants, if any is shown, is the proximate cause of the accident, must be determined by the jury.

3. Railroads—Injury to Stock—Signals at Crossings.—The signals required by the statute for a public crossing are intended for the protection of stock as well as persons on or at such crossings.

HUNT NORTHCUTT & BUSH and LEWIS APPERSON for appellant.

W. B. WHITE for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appelle sued in the court below to recover of appellant $2,500.00 damages for the death of a standard-bred trotting mare, known as ''Agnes Winn,'' of which he was the owner, alleging in the petition that she was killed at a public crossing by the negligence of appellant's servants in operating one of its trains which there struck and knocked her from the railroad track. The appellant's answer admitted the killing of the mare by its train, but denied that it resulted from any negligence of its servants. The trial resulted in a verdict for appellee awarding him $800.00 in damages. Appellant moved for a new trial, which was refused, complaining of which and the judgment entered upon the verdict, it has appealed.

In this state the liability of railroad companies for the killing of stock by their trains is declared and regulated by Kentucky Statutes, section 809, which provides:

''If by the locomotive or cars of any company cattle shall be killed or injured on the track of said road adjoining the lands belonging to or in the occupation of the owner of such cattle, who has not received compensation for fencing said land along said road, the loss shall be divided between the railroad company and the owner of such cattle; but in every case where cattle are killed or

injured by the negligence or carelessness of the agents or servants of any company, it shall pay full damages for such killing or injury; and the killing or injury of cattle by the engine or cars of any company shall be *prima facie* evidence of negligence and carelessness on the part of the company, its agents and servants.''

By virtue of the provisions of this statute the admission of the killing by its train of appellee's mare contained in appellant's answer, placed on the latter the burden of overcoming the presumption that it was caused by the negligence of its servants in charge of the train; and unless the evidence introduced in its behalf affirmatively showed the absence of such negligence, the recovery obtained by the appellee was authorized.

The mare was killed about one mile west of the city of Mt. Sterling at a grade crossing where what is known as the Levee turnpike intersects the appellant's railroad track. The crossing admittedly is a public crossing, hence it is such a crossing as Kentucky Statutes, section 786, declare must be approached by a railroad train in the manner and with the precautions required by its provisions. The language of the statute is as follows:

''Every company shall provide each locomotive engine passing upon its road with a bell of ordinary size, and steam whistle, and such bell shall be rung, or whistle sounded, outside of incorporated cities and towns, at a distance of at least fifty rods from the place where the road crosses upon the same level any highway or crossing at which a signboard is required to be maintained, and such bell shall be rung or whistle sounded continuously or alternately until the engine has reached such highway crossing, and shall give such signals in cities and towns as the legislative authorities thereof may require. For failure to comply with this section or for violating or permitting any of its employes or agents to violate the provisions of this section, the railroad company shall, in addition to subjecting itself to any damages that may be caused by such failure or violation, be guilty of a misdemeanor and be fined for each failure or violation not less than $10.00 nor more than $50.00, to be recovered by prosecution in the name of the Commonwealth in any court of competent jurisdiction. . . . ''

The witness, Finn, engineer in charge of the train by which the mare in question was killed, testified that in approaching the crossing at the time of the accident he gave with the locomotive whistle the customary crossing

signal at a distillery warehouse "between two hundred and three hundred feet" from the crossing, but that he gave none of the bell or whistle signals required by the statute, *supra*; and that the mare when first seen by him was on the crossing and so near the engine that he could not stop the train or slacken its speed before striking her. It is patent from the engineer's testimony that he failed to give the signals for the crossing, or any of them, required by section 786, and as his admission of such failure amounted to a confession of the negligence imputed to the company by section 809, *supra*, it only remained to be determined whether such negligence of itself, or in connection with other acts of negligence on the part of appellant's servants, if any were shown, was the proximate cause of the death of the mare, or whether it was caused by such other negligence, if any, alone.

It is insisted by counsel for appellant that the signals required for a public crossing by section 786, *supra*, are intended as a warning to persons and not to stock, of the coming of the train.  This contention is rested on the assumption that as the latter are without capacity to reason, they are incapable of understanding the object of the signals or their meaning.  The argument ignores the ease with which a horse or cow may be frightened and put to flight by the sudden, unusual, loud and prolonged noises of a locomotive whistle or bell or both, in signaling as required by the statute, and also the probability that such fright as would thus be produced in the animal would instinctively cause it to quickly flee in a direction and to a place of safety away from the approaching train and its noises. We must hold this contention unsound, for by numerous decisions by this and other courts it has been so declared. Remly v. I. C. C. Ry. Co., 151 Ky. 796; Campbell v. M. & O. R. R. Co., 154 Ky. 682; C. & O. Ry. Co. v. Burton, 156 Ky. 736; M. & O. R. R. Co. v. Raper, 22 R. 666; Campbell v. M. & O. R. R. Co., 162 Ky. 58; C. &. O. Ry. Co. v. Mason, 169 Ky. 699; Hohl v. Chicago, M. & St. P. Ry. Co., 61 Minn. 321; Palmer v. St. Paul, etc., R. R. Co., 38 Minn. 415; Owings v. Hannibal and St. Joseph R. R. Co., 58 Mo. 386; Elliott on Railroads, vol. 3, sec. 1206.

One of the best considered of the cases, *supra*, is that of Campbell v. Mobile & Ohio Railroad Company, 154 Ky. 582, in which it was clearly held that the statute was intended for the protection of stock as well as persons, and that where stock is killed or injured on a railroad cross-

ing by a train, the failure to give the statutory signals, accompanied by proof of the killing of or injury to the animal, makes a *prima facie* case for the plaintiff. In the opinion it is, in part, said:

"There is nothing in the language of section 786 from which it might be inferred that its requirements were intended only for the protection of human beings; it is sufficiently broad to hold the company negligent for a failure to observe its provisions whether men or stock may be killed or injured at a grade crossing, if its provisions are violated. The burden being on the company to overcome the presumption of negligence, and it having failed to show a compliance with the provisions of section 786, that presumption was not overcome."

On a second appeal of this case (Campbell v. M. & O. R. R. Co., 162 Ky. 58) the same doctrine was reaffirmed. In Hohl v. Chicago, Milwaukee and St. Paul Ry. Co., 61 Minnesota 321, Ann. Stat. Reports, 589), cited with approval in the opinion, *supra,* the Supreme Court of Minnesota in construing a statute of that state containing substantially the same provisions that are found in section 786, Ky. Stats., said:

"It was the duty of the engineer in charge of the locomotive in this case to give the signals at the crossing or cause them to be given. A failure to do so is a misdemeanor. Gen. Statutes, 1894, sec. 6637. It is not the province of the court to ingraft upon this statute any limitation not necessarily implied from the language used, and in as much as the giving of such signals has a tendency in some cases to frighten animals from the railroad track, we must presume that this was one of the results intended to be secured by the enactment of the law; hence an omission to comply with the statute in this case was evidence of negligence on the part of the defendant, but whether such omission was the cause of the accident or not was a question for the jury. Palmer v. St. Paul, etc., R. R. Co., 38 Minn. 415."

An examination of the authorities above cited will demonstrate that the law in this jurisdiction, and elsewhere, respecting the necessity of complying with the statutory requirements as to the giving of train signals for public crossings, and the effect of a failure to give them, is as we have herein stated it. In the case at bar the admitted failure of appellans's engineer to give the statutory signals for the public crossing was not the only negligence of which, according to the evidence, he appears

to have been guilty, for it convincingly shows that an object, even smaller than a horse, at or near the crossing in question, can distinctly be seen from the locomotive of an approaching train at a distance of 1,145 feet, actual measurement, the direction from which the train that killed appellee's mare was coming, and that the railroad track for that entire distance is practically straight and entirely unobstructed. In view of these uncontradicted facts, it would seem that the engineer or fireman, by the exercise of ordinary care in maintaining a lookout ahead on the track and toward the crossing, the direction the train was going, could have discovered the mare at or upon the crossing in time to make some effort to prevent her death. Yet the engineer testified that, though all the while keeping a lookout, he did not see the mare until the engine struck her, and that she came in contact with the side and rear of the engine as if she had collided with it after its front passed the crossing. The fireman in testifying admitted that he did not see the mare even at the time of the collision, and, also, that he maintained no lookout from his side of the engine in approaching the crossing, claiming that he was then engaged in firing the engine, which occupied his time until it was passed. Two witnesses residing in view of the crossing, Mrs. Penebaker and her daughter, Mrs. Lane, were introduced by the appellant. It does not appear at what distance they lived from the crossing, but both testified that just before the accident and after the whistling of the train at the distillery, they looked from the kitchen window and saw the mare of appellee and two other horses near the crossing, but were unable to say at what distance from it, except that Mrs. Penebaker thought it might have been 25, 50 or 75 feet. The horses were between them and the track, and they saw them run as if frightened by the train, one or two of them appearing to attempt to cross the track and the others appearing to go up the track. They then saw one of them struck by the train.

After the introduction of the appellant's evidence, two witnesses as to the killing of the mare, Curtis and Wilson, testified for appellee; the former that he saw the mare grazing near the crossing three or four feet from the railroad track just before she was killed; that he was then on the way to his day's work, and that upon walking about twenty yards down the pike from the crossing he turned and looking toward the crossing saw the mare killed.

Wilson testified that he was about fifty or seventy yards from the crossing driving in a buggy when the mare was killed. He saw the mare and other horses grazing near the crossing, not more than ten feet from the track; that the train came almost immediately, but did not blow its whistle until within fifty feet or less of the crossing and the bell did not ring at all. After the train passed the crossing he discovered that the mare had been struck by it, went to where she was lying and found that she was dead.

Appellee, in his own behalf, testified that shortly after the accident he examined the crossing and contiguous ground, and found blood in the middle of the railroad track on the crossing, indicating that as the place of the train's collision with the mare. Other witnesses introduced by appellee gave testimony as to the market value of the mare killed, regarding which there was little controversy.

It is manifest that appellant's contention that the verdict is unsupported by or flagrantly against the evidence furnishes no ground for reversing the judgment. Even if it properly could be said that the admitted failure of appellant's servants to give the signals for the public crossing required by the statute were not of itself such evidence of negligence as would support the verdict for the appellee, when there is added to such neglect of statutory duty the evidence of the appellee respecting the unobstructed view from the engine of the railroad track and crossing for a distance of 1,145 feet before reaching the crossing, conducing as it did to prove that by the use of ordinary care in maintaining a lookout forward, appellant's engineer would have been made acquainted with the presence of the mare at or near the crossing in time to have enabled him to slacken the speed of the train, stop it, or by the use of alarm signals avoid killing her, it cannot with any degree of reason be claimed that such evidence of combined negligence would not support a verdict for appellee.

Appellant's objection to instruction No. 1 given by the trial court, in our opinion, affords no ground for disturbing the verdict. The criticism is that in defining the duties of those in charge of appellant's locomotive respecting the care to be observed in keeping a lookout therefrom, it erroneously declared that it should be maintained "all along the railroad track and right of way to discover the presence of horses which might be or might

have strayed upon said track and to use ordinary care to avoid killing or injuring said horses." It is argued that the words "all along" import that the outlook is to be constant or unceasing. We think the meaning attempted to be given these words by counsel is somewhat strained; it seems to us that they merely mean and were intended to advise the jury that the outlook demanded is to be confined to the track and right of way lying ahead of the moving train and that its servants are not required to look for the presence of stock elsewhere. Upon the facts of this case the words complained of were not, in our opinion, calculated to mislead the jury, nor did their use prejudice the appellant in any substantial right. But, as said in C. & O. Ry. Co. v. Mason, 169 Ky. 699, in condemning the use of the word "vigilant" in a similar instruction, but refusing to reverse the judgment by reason thereof:

"We think it better practice in giving what might be called standard instructions to use the words generally used in such instructions without the addition of new words or the omission of old ones. . . ."

In other respects the instructions given by the court are not complained of and, therefore, need not be commented upon. We are unable to see any error in the trial court's refusal of the instructions offered by the appellant, as all they contain material to appellant's defense is amply expressed in the instructions given.

We find no error in the introduction or exclusion of evidence and none has been pointed out by appellant's counsel.

Judgment affirmed.