MARY C. WARD, ADMRX.

*vs.*

MAINE CENTRAL RAILROAD COMPANY.

Washington.     Opinion, December 16, 1932.

*Hinckley, Hinckley & Shesong,* for plaintiff.
*Perkins & Weeks,*
*Harold H. Murchie,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

PATTANGALL, C. J.   Motion and exceptions. Action brought under the Federal Employers' Liability Act for the benefit of the widow and minor children of Arthur C. Ward, an employee of defendant, who was struck and instantly killed by its train while engaged in reconstruction work on a bridge on its line. It is admitted that the statute relied upon is applicable to the case.

The case was tried to a jury which found for the plaintiff. The issues raised below were (1) negligence of defendant, (2) negligence of plaintiff's intestate, (3) assumption of risk by plaintiff's intestate. The Presiding Justice ruled, as a matter of law, that plaintiff's intestate was negligent and submitted the remaining questions. The sole issue to be considered by this Court is whether the evidence, taken in the light most favorable to plaintiff, warranted the verdict.

The record discloses no serious conflict of evidence. The bridge in question was two hundred and eighty-six feet in length, erected over a section of rocky shore at an elevation of thirty feet and crossed by a single railroad track. It was too narrow to permit the passage of a workman and a moving train at the same time. Ward was engaged in working underneath the bridge, but was at times obliged to cross over it. In the early afternoon of the day on which he was killed, he left his work at the westerly end of the bridge and crossed to the opposite end for the purpose of procuring some needed tools. About ten feet from that end of the bridge and twelve feet south of the southerly rail of the track, a steam compressor used in riveting was located, the box of tools being near it. Ward assisted the men in charge of the compressor in starting it, procured the needed tools, and turned to go back to his work. He proceeded approximately ten feet to reach the easterly end of the bridge, along which he had walked, at most, an additional ten feet when he was overtaken by the train and killed.

From the point where he stood by the compressor, he had a clear and unobstructed view of the track for a distance variously estimated at from five hundred to eight hundred feet toward the east, the direction from which the train approached; and during the few seconds that elapsed before he reached the point at which he met his death, there was no time when he would not have seen the oncoming train had he even casually glanced up the track.

This was not a regular train, but he was aware that as a rule it crossed the bridge daily between 11.30 A.M. and 1.30 P.M. It was in the vicinity of 1.00 P.M. that he was killed. There can be no question but that he was negligent in leaving the platform on which the compressor stood and walking out on the bridge without looking to see if a train was approaching. But if the defendant was negligent,

Ward's negligence would not constitute a defense. Contributory negligence under the statute governing this case affects damages, not liability.

The first important question, therefore, with which we are confronted is whether or not defendant was negligent. Plaintiff in her writ charged negligence on four counts. A ruling by the Court removed two of them from our consideration. The remaining charges are (1) failure of engineer to observe intestate and to exercise due care in operating locomotive; (2) like failure on the part of the fireman.

Plaintiff contended that no lookout was kept by engineer or fireman and that no warning was given of the approach of the train. There is some slight conflict of evidence on the latter proposition. The trainmen testified that the bell was rung. Three witnesses called by plaintiff testified that they heard no bell. This does not seem important, however, because all agree that the noise of the compressor would prevent those standing near it from hearing the bell. The speed of the train for some fifteen hundred feet before it reached the bridge was between eight and ten miles an hour. There appears, therefore, to have been no negligence so far as warning or speed is concerned in the operation of the train, or at least none which could be deemed a proximate cause of the injury sustained.

There remains the failure of the men in charge of the engine to observe Ward on the track. Unquestionably an engineer is under a duty to look ahead and see that the track is clear. If he sees a person on the track, it is his duty to warn him; and if, because of interfering noises or for any other reason, it is impracticable to convey a warning by the use of bell or whistle, it may become his duty to bring his train to a stop.

The engineer and fireman both testified that they were in their proper positions in the cab and were looking ahead; that as they approached the bridge they could see that there was no one on it or on the track near its easterly end. There was a slight curve in the road and they testified that about one hundred feet of the track immediately in front of them was not visible because of this curve and the engine shutting off that much of their view. It was apparently during the time that the train was traversing that dis-

tance that Ward left his place of safety on the compressor platform and walked along the track and upon the bridge. Considering the distance travelled by him and the speed of the train, he must have stepped on to the track when the train was not more than seventy or eighty feet distant. Defendant contends that seeing the track clear, the engineer had a right to presume that no one would be sufficiently reckless to walk directly in the path of an engine in plain view and but a few feet away, and that as he had seen a clear track all the way along and had especially observed that the bridge was clear of pedestrians, he was in the exercise of ordinary care in proceeding on his way. There was no other course for him to pursue unless he stopped or practically stopped his train at the point where his view was obscured, and to require this, defendant argues, would be to insist on the exercise of extraordinary care.

This argument appeals to us as sound. In the brief of plaintiff, it is stated that Ward was "out on the bridge, probably something over thirty feet" when struck by the train. If the record bore out that statement, the case might stand on an entirely different footing, but the fact is otherwise.

When the train was stopped, Ward's body lay between the first and second cars, ten feet from the easterly end of the bridge. After he was struck, the engine, tender and one car passed over him. The contact with the train necessarily pushed his body somewhat forward. He had, therefore, travelled less than ten feet on the bridge when overtaken.

A witness for plaintiff testified that he saw Ward on the bridge, just before he was struck, thirty feet away from where the witness was standing, not thirty feet from the end of the bridge. Counsel inadvertently misinterpreted the answer and the jury may have done so, but the evidence is plenary as to where the body was found.

The duty of an engineer with regard to keeping a lookout for the purpose of safeguarding employees working on or about railroad tracks is discussed in many opinions. We know of no precedent which would warrant sustaining a finding of negligence under the circumstances shown here.

The construction crew was at work underneath the bridge. No employees had reason to be upon the surface of the bridge excepting as they crossed it from time to time in connection with their

duties, and before doing so had ample opportunity to observe an oncoming train. It is in evidence that another workman started to cross and had proceeded some distance when he saw this train approaching and immediately returned to a place of safety. The bridge was clear when the train, moving at a rate of twelve or fifteen feet a second, had arrived at a point where any observer could see that it must reach the bridge in six or eight seconds. It was not reasonable to anticipate that anyone would attempt to cross under these circumstances. Ordinary prudence did not dictate providing against such an exigency.

On this record and as the case was submitted to the jury, the sole proximate cause of Ward's death was his own negligence. He knew the danger incident to walking on a railroad track. He knew that if he was overtaken by a train while crossing the bridge, there was no escape from death. He knew that the construction train was not running on a schedule but was likely to cross the bridge at or near the time when it did cross on the day in question. He knew that the noise of the compressor near which he was standing would prevent his hearing an approaching train or a warning from its bell or whistle. He had but to look up the track before he left a place of safety to observe an oncoming train. Regardless of all this, he negligently walked directly in the path of the approaching train, continuing on to a point where no opportunity for escape was presented. His own conduct, not that for which the defendant was responsible, caused the tragedy which followed.

Under circumstances somewhat similar, the United States Supreme Court denied recovery in *Reese* v. *Philadelphia R. R. Co.*, 239 U. S., 463, 36 S. Ct., 134, 60 L. Ed., 384; *Great Northern Railway Co.* v.*Wiles*, 240 U. S., 444, 36 S. Ct., 406, 60 L. Ed., 732; *Southern Railway Co.* v. *Gray*, 241 U. S., 333, 368 Ct., 558, 60 L. Ed., 1030.

In view of our conclusions, we do not need to discuss either the doctrine of assumption of risk and its application to the facts here set out or the exceptions taken to the refusal of the Presiding Justice to instruct the jury as requested on that phase of the defense.

We realize that the verdict of a jury should not be lightly set aside; but to stand, it must be based upon evidence. In this case, we find none to support it.                                   *Motion sustained.*