**CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Libellant,**

v.

**THE W. C. HARMS and H. W. A. Harms, dba Harms Towing Company, Respondents.**

**No. 1081.**

United States District Court
S. D. Texas, Houston Division.
May 17, 1954.

---

Fulbright, Crooker, Freeman, Bates & Jaworski (Sweeney J. Doehring), Houston, Tex., for libellant.

Eastham, Hinds & Dale (Dan H. Hinds), Houston, Tex., for respondents.

KENNERLY, Chief Judge.

A collision between a fast passenger train and a river barge is unusual, but not impossible, as this Record discloses. This suit is by libellant, a Railroad Company, against a tug and barge, and their owner and operator, for damages alleged to have been caused Railroad Company by such a collision.

Libellant, Chicago, Burlington & Quincy Railroad Company, is a railroad corporation, maintaining railroad lines or tracks between St. Louis, Missouri, and Burlington, Iowa, passing through the town of Keokuk, Iowa, over which lines or tracks it operates trains for the carriage of freight and passengers for hire.

In the vicinity of and north of Keokuk, the main line of libellant's railroad, on which trains are daily operated, runs near the water and along the west bank of the Mississippi River, the waters of which are navigable and upon which waters many barges, tugs, and other vessels are daily navigated. On or about November 16, 1950, there was a collision on such railroad tracks between libellant's fast passenger train carrying passengers and known as the "Mark Twain Zephyr" and the Barge P. P. Co. 203 in the tow of the Tug W. C. Harms, owned and operated by H. W. A. Harms and the Harms Towing Company, respondents, which was navigating the waters of such river. The barge had been pushed by respondents into the west bank of the river so far as to extend across or nearby the easterly rail of such railroad, or in some such position on libellant's railroad tracks as to interfere with the operation of libellant's trains. The train struck the barge and was derailed.

The pleadings of libellant allege many negligent acts upon the part of respondents. Respondents' pleadings in turn allege many negligent acts upon the part of libellant. Each party alleges that the negligence of the other was a proximate cause of the collision and the resultant injury to libellant's train and of libellant's damages.

This is a hearing on the question of liability for damages only. The amount of damages, if any, are to be hereafter ascertained.

The facts are substantially as follows:

(a) The Tug W. C. Harms is a steel tug of approximately 85 feet in length, with a 24-foot beam, and a draft of 8 feet. On November 16, 1950, such Tug was proceeding south on the waters of the Mississippi River, having in tow and pushing ahead of her two light tank barges, the P. P. Co. 203 and P. P. Co. 204, with P. P. Co. 203 in the lead. The tow arrived just above Lock No. 19 about

11:00 A.M. on such date, and finding it necessary to await her turn in going through the lock, pushed her tow into the west bank of the river. Later believing an opportunity had been presented to go through the lock, the tow was pulled back into or near the center of the river, but found it necessary to again wait its turn through the lock. Whereupon such barges were again pushed into the west bank of the river, and the lead barge, P. O. Co. 203, was pushed into and upon the river bank so far as to extend across or nearby the easterly rail of libellant's railroad track, or in some such position, thereby blocking the passage of trains. Such barge was negligently allowed by respondents to remain in that position, and at about 1:45 P.M. on such date, libellant's northbound train, the "Mark Twain Zephyr", appeared and ran into and struck the barge. The train was derailed and wrecked, causing property damage and perhaps some injuries to passengers.

It is perfectly plain that while those in charge of the Tug W. C. Harms were probably competent, they were indifferent and negligent. They pushed the lead Barge P. P. Co. 203 into the bank of the river, without having any person or a lookout on either of the barges, and without investigating to see whether the barges had been pushed too far and onto the railroad track, although they knew the track was there and that trains were operated over it.

(b) The negligence charged by libellant against respondents is set forth in the margin.[1] I think and find that the tug W. C. Harms and her tow were in charge of competent persons, but they were indifferent and negligent. I think and find that the tug W. C. Harms was sufficiently and adequately powered to safely handle both of the barges in her tow had she been properly handled. I think and find the tug W. C. Harms and the two barges in her tow were seaworthy.

I find, however, respondents guilty of the acts of negligence charged in Subparagraphs 4, 5, 6, 8, 9, and 10 of Paragraph 5 of libellant's Libel.[1] As to the acts charged in Paragraph 7, I do not think the tug W. C. Harms intentionally forced the barge upon libellant's tracks, but I think and find she carelessly and negligently did so. As to the acts of negligence charged in Paragraph 11, I think that respondents were negligent in bringing about and not discovering the conditions which caused the collision, but that they moved promptly when they

---

1. Libellant charges respondents with negligence as follows:

"(1) The tug W. C. Harms was not in charge of competent person or persons.

"(2) The tug W. C. Harms was not sufficiently or adequately powered to safely handle the tow that she was pushing in the waters through which said tug and tow were expected to navigate.

"(3) The tug W. C. Harms was unseaworthy.

"(4) The tug W. C. Harms failed to maintain any or proper lookout.

"(5) The tug W. C. Harms failed to ascertain whether or not the bow of the lead barge and her tow was fouling the main railway line of libellant.

"(6) The tug W. C. Harms negligently moored or grounded her tow.

"(7) The tug W. C. Harms deliberately forced the forward rake of her lead barge upon libellant's railroad embankment and tracks.

"(8) The tug W. C. Harms negligently failed to moor her barges to mooring piers duly provided for the mooring of such vessels, and said mooring piers were open and available to the tug W. C. Harms immediately adjacent to the point where the tug W. C. Harms forced its barges against and upon libellant's railway embankment and tracks.

"(9) The tug W. C. Harms negligently left its lead barge obstructing the main railway line of libellant for over two hours at a time when those in charge of the operation of the W. C. Harms knew or should have known that express trains of libellant might or would be operating upon said track.

"(10) The tug W. C. Harms caused or permitted her tow to trespass upon libellant's property.

"(11) Those in charge of the operation of the W. C. Harms failed to take any or proper avoiding action after realizing that danger of collision between libelant's train and the lead barge in the tow of the tug W. C. Harms was eminent."

saw libellant's train coming and realized the danger, but were too late to prevent the collision.

(c) I find that libellant's train "Mark Twain Zephyr" was in first class condition. Since this is a proceeding in admiralty, it might not be out of place to say that the train was "seaworthy". The evidence shows that all parts of the train, including her brakes, headlights, signal devices, etc., were in good condition. Nothing about the condition of the train in any way caused the collision.

The train was being operated by an engineer and an assistant, either of whom was permitted and required under the rules of the Railroad Company to operate the diesel engine pulling the train. Both were carefully selected and competent operators. The contention that at the time of the collision, the engine was being operated by the assistant and that he was not competent is without merit. The facts show that these two men were alert and on the lookout, and the contention that they were negligent in discovering the barge on the track is not meritorious. When they discovered the barge, they promptly applied the air brakes and other facilities to stop the train, but it was not humanly possible to do so before it struck the barge. The train was not at any time traveling at an unsafe, dangerous, or excessive rate of speed, considering the area through which she was passing. Nor was she at any time traveling at any unlawful rate of speed, in violation of any law, ordinance or regulation.

Libellant's tracks were in good condition and nothing about them caused or contributed in any way to the collision. Whatever growth or bushes or vegetation that were on the railroad right-of-way were not at the time of the collision so large nor were they in such position as to interfere with the enginemen seeing the barge and did not interfere with them. It is interesting to notice the photographs offered by both parties, some of views near the time of the collision and others at different times later. None of them show such growth on the right-of-way that could have obscured the view of those in charge of the train, sitting as they were on the train.

I am not greatly impressed with the efforts of respondents to show by various tests, photographs, etc., negligence on the part of libellant. In one instance at least, when respondents' agents were making tests, I am not sure that they had the right location of the scene of the collision. All tests were made under conditions more or less different from what existed at the time of the collision.

(d) Respondents went to trial on their Second Amended Answer, but after all the evidence was in, moved to be permitted and were permitted to file Third Amended Answer. In both pleadings, they charged negligence upon the part of libellant and its employees and particularly those in charge of libellant's train. Such charges of negligence contained in such Third Amended Answer are shown in the margin.[2] I find libellant, its servants, agents and employees,

---

2. The acts of negligence which respondents charge against libellant are as follows:

"(1) She was not in charge of competent persons.

"(2) She had no or no proper lookout.

"(3) She failed to stop her engine timely.

"(4) She failed to set her brakes timely.

"(5) She proceeded ahead after she knew or should have known that the bow of the barge was on or close to the tracks.

"(6) She failed to blow any timely signals.

"(7) She failed to do anything to avoid the collision.

"(8) She wholly failed to exercise any care whatsoever.

"(9) She was proceeding at an excessive rate of speed under the circumstances.

"(10) She took off her brakes when she should have continued to apply them.

"(11) Her brakes were defective or inadequate.

"(12) She failed to come to a stop timely.

not guilty of all the acts of negligence alleged against them there.

The case has been orally argued, and the authorities cited by respondents examined.[3] Likewise the authorities cited by libellant.[4]

1: The Jurisdiction here is under Section 740, Title 46, U.S.C.A., as amended June 19, 1948,[5] and the liability of respondents for damages should be ascertained under and in accordance with Maritime Law.

2: Under the Maritime Law, libellant, having shown negligence by respondents' proximately causing such collision, as pointed out herein, and libellant being free from negligence, is entitled to recover damages from respondents.

3: If the Common Law is applicable, the same results are reached.

It follows that Judgment should be and is rendered for libellant against respondents. Let appropriate Decree be drawn and presented.

"(13) In permitting brush, weeds, and other growth on its right of way.

"(14) In permitting brush, weeds and oher growth to be on its right of way on the inside of a curve so as to obstruct and reduce the visibility ahead of its engineer and fireman; and

"(15) In permitting any growth on its right of way that would obstruct the visibility of the crew of its train of objects or persons ahead on or near the tracks."

3. These authorities are as follows:

The Socony, No. 9, 2 Cir., 74 F.2d 233; Nark v. Horton Motor Lines Co., 331 Pa. 550, 1 A.2d 655; The Perseverance, 2 Cir., 63 F.2d 788; The El Monte, 5 Cir., 252 F. 59; The Sanday, 2 Cir., 122 F.2d 325; Dahlmer v. Bay State Dredging & Contracting Co., 1 Cir., 26 F.2d 603; Cantu v. South Texas Transportation Co., Tex.Civ.App., 110 S.W.2d 995; Charbonneau v. Hupaylo, Tex.Civ. App., 100 S.W.2d 745; The Yucatan, 9 Cir., 226 F. 437; Gulf, C. & S. F. Ry. Co. v. Russel, 125 Tex. 443, 82 S.W.2d 948, 951; Mexican Central Ry. Co. v. Lauricella, 87 Tex. 277, 28 S.W. 277; McArver v. Southern Ry. Co., 129 N.C. 380, 40 S.E. 94; Ward v. Maine Cent. Ry. Co., 131 Me. 396, 163 A. 273; Blackburn v. Louisiana, R. & Nav. Co., 144 La. 520, 80 So. 708; Savage v. Chicago, R. I. & P. Ry. Co., 328 Mo. 44, 40 S.W. 2d 628, 629; Sawyer v. Roanoke R. & Lbr. Co., 145 N.C. 24, 58 S.E. 598, 22 L.R.A.,N.S., 200; Houston T. C. R. Co. v. Harvin, Tex.Civ.App., 54 S.W. 629; Miller v. Baldwin, La.App., 178 So. 717; Ahnefeld v. Wabash R. Co., 212 Mo. 280, 111 S.W. 95; New York Telephone Co. v. Beckers, 2 Cir., 30 F.2d 578; Shawver v. American Ry. Express Co., Tex.Civ. App., 236 S.W. 800; Patton v. Dallas Gas Co., 108 Tex. 321, 192 S.W. 1060;

Chesapeake & O. Ry. Co. v. Mason, 169 Ky. 699, 185 S.W. 71. Bass v. Chicago, Burlington & Quincy R. Co., 28 Ill. 9, 81 Am.Dec. 254; Curry v. Southern R. Co., 148 Ala. 57, 42 So. 447; Ft. Worth Belt Ry. Co. v. McKinney, Tex. Civ.App., 145 S.W. 666; Eames v. Texas & N. O. R. Co., 63 Tex. 660.

4. The authorities cited by libellant are as follows:

Kansas City, S. & M. R. Co. v. Kirksey, 48 Ark. 366, 3 S.W. 190; Wise v. Atlanta & W. P. R. Co., 61 Ga.App. 372, 6 S.E.2d 135; Thomas v. Chicago, M. P. & St. P. Ry. Co., 114 Iowa 169, 86 N.W. 259; Papish v. Chicago M. & St. P. Ry. Co., 183 Iowa 601, 167 N.W. 686; Mann v. Des Moines Ry. Co., 232 Iowa 1049, 7 N.W.2d 45; Chesapeake & Ohio Railway Co. v. Mihas, 208 U.S. 102, 50 S.Ct. 42, 74 L.Ed. 207; Clemans v. Chicago, R. I. & P. Ry. Co., 128 Iowa 934, 104 N.W. 431; Hartford Fire Ins. Co. v. Texas & N. O. R. Co., La.App., 70 So.2d 767; Monahan v. Keokuk & Des Moines Railway Co., 45 Iowa 523; McKonkey v. Chicago, B. & Q. R. Co., 40 Iowa 205; Pennsylvania R. Co. v. Milleson, 51 Ohio App. 528, 2 N.E.2d 17.

5. Section 740, Title 46, U.S.C.A., is as follows:

"The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel or navigable water, notwithstanding that such damage or injury be done or consummated on land.

"In any such case suit may be brought in rem or in personam according to the principles of law and the rules of practice obtaining in cases where the injury or damage has been done and consummated on navigable water * * *."